Chicago, Milwaukee & St. Paul Railway Company, Appellant, vs. H. W. Wright Lumber Company, Respondent.

*September 28—October 18, 1904.*

*Railroads: Right of way: Contracts: Construction: Repugnancy: Ambiguity: Specific performance: Dismissal of complaint.*

1. In construction of contracts it is only when it is found impossible to give a meaning to one part consistent with any other that repugnancy exists, and the duty arises to choose as to which phrase shall exclude the other.

2. Plaintiff and defendant entered into a contract for the construction of a spur track for the transportation of timber from defendant's lands, to be maintained for ten years, or until such earlier date as defendant should have completed the entire

cutting and transportation of its timber. The contract provided that defendant should procure the right of way, grade the track and supply all bridges and culverts, except one bridge, and all the ties, the plaintiff to build one bridge and furnish and lay the rails. The contract further provided that, at plaintiff's option, the defendant should convey or procure to be conveyed to it a right of way for said spur track, and in a separate clause that at any time within the term of the contract the defendant should convey all its right, title and interest to the right of way and spur track thereon for a certain sum of money. .*Held*, that until the plaintiff elected to purchase and pay for the defendant's structures on the right of way, plaintiff was entitled only to such right of way as was needed for the spur track for the ten-year term, or until completed cutting and transportation of defendant's timber within that term.

3. When the right sought by specific performance has never been refused, no decree is necessary, and the dismissal of the complaint is proper.

APPEAL from a judgment of the circuit court for Lincoln county: B. F. DUNWIDDIE, Judge. *Affirmed.*

In 1897 the parties entered into a written contract reciting: That the defendant was the owner of tracts of timber in township 41, range 7, Vilas county, Wisconsin, which it desired to cut and transport to its mills at Merrill, on the plaintiff's railway. That the parties proposed to construct and operate a spur track about seven miles in length, extending from Plum Lake station, in a northwesterly direction, to reach and transport said timber, and for other purposes. That the railway company should cause to be located, by survey, the course of said spur track, and the lumber company should "at its own expense convey or cause to be conveyed to the railway company a right of way for said spur track fifty (50) feet wide on each side of the center line thereof. Such conveyances shall vest in the railway company a good and sufficient title of said right of way, but shall also provide that, whenever it abandons said spur track and remove the rails and fastenings and other material by it placed therein, then

(and not otherwise) said right of way shall revert to the respective grantors thereof, or to their successors or assigns." That the lumber company should, at its own expense, clear said right of way, and construct grades, culverts, and bridges (except a bridge across Plum Lake), and lay the necessary cross-ties for said spur track, to the satisfaction of the railway's engineer. That the railway company should construct the bridge across Plum Lake, and furnish and put in place all the rails and other material necessary to complete said spur track, and should provide the rolling stock, and maintain and operate said track, and have the exclusive management thereof. There were provisions for the rapidity of loading by the lumber company, rate of freight to Merrill on its logs, and shipment of the product from Merrill over the railway's other lines; also, that the railway company might construct branches and extensions as it saw fit, and use the spur track for the purpose of hauling over it freight of all descriptions, without compensation to the lumber company, except a payment of ten cents per 1,000 for all sawlogs and lumber belonging to other persons. By the seventh section it was agreed that the contract should remain in force until such time as the lumber company had removed all the timber it desired to transport by rail from the described lands and any other lands in said township it might acquire, but not exceeding the term of ten years, and that "at any time during the continuance hereof the railway company may purchase, and the lumber company will sell to it, all the right, title, and interest of the lumber company in and to said spur track, at and for the sum equal to the costs of such interest, but not exceeding the sum of $11,979.60, and that upon the tender to it by the railway company of such actual cost, or of the aforesaid sum, the lumber company shall convey and warrant to the railway company, free and clear of any and all liens and incumbrances, all its right, title, and interest in and to the right of way (of the width hereinbefore specified) and

to said spur track, and to all structures and improvements thereon and appurtenances thereto." It further provided that, in case of refusal to make such conveyance, then thirty days after demand the railway company might declare the contract at an end and remove its rails, fastenings, and other materials from said spur track, and should not be subject to any claim for damages on account of such removal, but should not be precluded from taking any other lawful remedy to enforce its right under this contract, particularly to the conveyance of the lumber company's interest in said spur track, in case of its election to purchase as aforesaid; that, upon so acquiring the lumber company's interest in the said spur track, then and thereafter, during the term of the contract, the railway company should transport the lumber company's logs upon the same terms, but should not be required to pay to the lumber company any compensation for hauling over said spur the freight, logs, or lumber of other parties. Afterwards an extension of about a mile was agreed to upon the same terms, and the amount payable to the lumber company, upon election to purchase, was increased to $16,079.60. Thereafter the lumber company obtained conveyances to itself of a 100-foot strip of land on the line surveyed, with no limit to its time of enjoyment, and a spur track was constructed over the same and over lands which the defendant owned in fee simple. At the time of the finding the defendant had not completed cutting and transportation of its timber, but required about one year more therefor, and might purchase other lands in the vicinity, necessitating still further increase of the time. About September 30, 1902, and again about January 14, 1903, the plaintiff demanded of the defendant that it execute to it a good and sufficient conveyance of the exclusive use for all railway purposes of the 100-foot strip, without any limit of time, save that it should terminate in case of abandonment of the spur track and removal of rails and other materials. The defendant refused to make

conveyance in such form, but offered to convey to the plaintiff a right of way over said strip, to continue and remain in force during the term of the contract, namely, until all the timber had been transported, not exceeding the term of ten years, which conveyance the plaintiff refuses to accept. The court found that the expenditure by the defendant equaled or exceeded $16,079.60; that a large proportion of the ties had rotted away and become substantially valueless, and been replaced by new ties by plaintiff. This action was. commenced in May, 1904, praying a decree of specific performance to compel· a conveyance of the exclusive use of said strip of land, for unlimited time, save upon the condition of abandonment and removal of rails, etc. The court construed the contract in accordance with defendant's contention, and held that the plaintiff was not entitled to such a conveyance as it demanded, but only to such as tendered by the defendant. Accordingly judgment dismissing the complaint was entered, from which the plaintiff appeals.

The cause was submitted for the appellant on the brief of *Curtis & Reid,* attorneys, and *Burton Hanson,* of counsel, and a reply brief signed *Curtis & Reid;* and for the respondent on the brief of *Van Hecke & Smart.*

Dodge, J. The question presented is one of construction of a written contract, mainly by means of its own words, aided, if in the examination of those words there arises any ambiguity, by certain undisputed facts surrounding the parties at the time it was made. As has often been said, the construction or meaning intended to be conveyed by the words of a writing is seldom aided by argument or precedents. The one charged with the duty of construction must assume that parties intended to express that which the words used convey to his mind. As in case of wills, the all-dominating rule is to ascertain what the parties intended, and to give effect to it. To this end no single sentence or paragraph stands by itself,

but the whole instrument must be read together, and, if possible, a purpose ascribed to each part thereof which is consistent with every other part. *Wis. M. & F. Ins. Co. Bank v. Wilkin,* 95 Wis. 111, 69 N. W. 354; *Brittingham & H. L. Co. v. Manson,* 108 Wis. 221, 225, 84 N. W. 183. It is only when it is found impossible to give a meaning to one part consistent with any other that repugnancy exists, and the duty arises to choose as to which phrase shall exclude the other. The appellant selects a clause requiring the respondent to convey or procure to be conveyed to it a right of way for said track, and claims that this can be satisfied only by a formal conveyance of the exclusive use, for all railway purposes, of a strip of land 100 feet in width, perpetually, except in the case of abandonment by the railway company. Respondent points to the seventh paragraph of the contract, providing that at any time within the term of the contract the lumber company shall convey all its right, title, and interest to the right of way and the spur track thereon for about $12,000, as suggesting the obvious understanding of the parties that, when the first paragraph had been complied with, respondent would still retain in this tract of land a substantial and valuable interest, which clearly would not be the case after a conveyance such as is now demanded. We see no escape from the conclusion that the parties had in mind such a situation, and as a result that they must have contemplated such a "conveyance," or such meaning for the expression "right of way," in phrasing the first paragraph, as would be consistent with that result. Hence we must recognize that from the words of the contract itself arises a measure of ambiguity as to one or the other, or both, of these expressions. This justifies us in considering the situation of the parties as disclosed mainly by the contract, but with some aid from the facts conceded and found, which are set forth in the statement of facts.

It is to be noted, first, that the right of way to be conveyed according to the first paragraph is a right of way "for said

spur track;" that spur track is the one which, according to the second preliminary paragraph, the parties proposed to construct and operate in order to reach and transport respondent's timber and for other purposes. The other purposes are stated in the contract as the carriage over the track of such freight as the railway company can obtain from others. But the parties themselves fixed a term to their entire contract, namely, the term of ten years, or until such earlier date as shall complete the entire cutting and transportation of respondent's timber. There is nothing in the contract to indicate that they contemplated joint construction or operation of this spur track for any longer period. Why, then, should a right of way "for said spur track" be for any longer period? We confess inability to find a satisfactory answer to this query. That such was the limitation in mind is very strongly suggested by the consideration that the price to be paid for the property in this right of way and spur track, which both parties contemplated as remaining in the lumber company, and as having a large value, remains the same throughout this ten years. It was only during the term of the contract that the railway company had a right to buy it; and whenever it did so, whether in the first or the last year, it was to pay the same price for it. It was only during that term that the railway company was to pay the lumber company anything for the privilege of transporting lumber of other people. Now, if at the end of the ten-year term that duty was to cease, and yet the railway company would continue to have a perpetual occupancy of that right of way and the spur track thereon for so long as it chose to operate a railroad, which might be forever, clearly the value of respondent's interest was a steadily diminishing quantity. It would be absurd to suppose that the railway company would agree to pay as much in the ninth year of the term as in the first, when by the lapse of the one remaining year it would in all practical effect acquire it for nothing. On the other hand, if we adopt the respondent's

construction that this contract provides for the operation of this spur track merely for the term of the contract, and for the providing by the lumber company of a right of way merely for that purpose, the signification of the seventh paragraph is at once clear and reasonable. It then becomes apparent that it was made in contemplation of the possibility that the railway company might wish to permanently maintain and operate a railroad over this same right of way, not for the purposes of the spur track to reach and transport defendant's timber, but for the general purposes of a railroad. In that event it was to have the option to acquire a permanent right of occupancy of this strip of land for its own purposes. In that case, and that only, it took to its own use the grading, etc., which had been constructed by the lumber company, and would gain benefit from it. The parties upon that view must have contemplated that the railway company was vested with an alternative choice: First, to use and occupy the right of way and grade thereon constructed by the lumber company merely for the purpose of earning the profits resulting from the hauling of the defendant's timber and such incidental freight as might be obtainable meanwhile, and then to abandon it—having been to the expense of laying its tracks and one bridge—while the defendant would have been at the expense of acquiring the right of way and constructing the grade; or, on the other hand, to elect to maintain a permanent railroad, and thereupon to pay the respondent that which it had expended in making the structure thereafter to be owned and used by the railway company. Special stress is laid by appellant on the condition expressly required to be embodied in the first conveyance that the right of way should revert in case the railway company removed its rails, etc., "and not otherwise." This, however, is as applicable to a right of way for a ten-year term as to one in perpetuity. It was quite as essential to defendant's purposes, if the railway abandoned the contract before its completion, that the right

of way should at once revert, so that it could immediately be used as an outlet for defendant's timber by laying new track, as it could be at any subsequent time.

There are other provisions of the contract which, to our minds, confirm the views above expressed; but their recitation would not advance us beyond the point we have already reached. Our conclusion agrees with that of the trial court to the effect that, until it elects to purchase and pay. for defendant's structures thereon, plaintiff is entitled only to. such right of way as is needed for the spur track which the contract requires the parties to maintain and operate, namely, for the term of ten years, or until completed cutting and transportation of defendant's timber within that term. That, as we understand, has never been refused; hence no decree of specific performance is necessary, and dismissal of the complaint was proper.

*By the Court.*—Judgment affirmed.