BARKHAUSEN, Appellant, vs. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY and another, Respondents.
SAME, Respondent, vs. SAME, Appellants.

*January 12—April 5, 1910.*

*Deeds: Construction: Extrinsic evidence: Reservation for benefit of grantor: Covenants: Easements: Appurtenant to land: Subsequent conveyance: Right of way for railroad: Proper use of spur track: Condemnation proceedings: Parties.*

1. A deed conveying all of a certain tract of land except a strip on each side thereof and providing that a railway company should have a right of way of designated width across the whole tract, but not specifying the ownership of the excepted strips nor

stating that the right-of-way clause was inserted for the benefit
of those strips or either of them, was sufficiently ambiguous to
warrant admission of extraneous evidence as to the circum-
stances surrounding the parties when it was executed.

2. It being shown that the grantor was the owner of one of the ex-
cepted strips when the deed was made, that it was valuable
chiefly for factory sites, and that it could not well be reached
by a spur track unless over the land conveyed, it sufficiently
appears that the provision for right of way was inserted for the
benefit of the grantor as owner of such adjacent strip.

3. A deed will be so construed as to effectuate the intention of the
parties if the language used is reasonably susceptible of such
construction.

4. A clause in a deed, inserted for the grantor's benefit, providing
that "it is also understood" that a certain railway company
shall have a right of way across the land conveyed, was a cove-
nant, the word "understood" being equivalent to "agreed;" and
upon acceptance of the deed such agreement became binding
upon the grantee.

[5. Whether, in a grant of land, a reservation for the benefit of a
third person is void, as stated in *Strasson v. Montgomery*, 32
Wis. 52, not determined.]

6. An easement, created or reserved in a grant, for the benefit of
adjoining land of the grantor is appurtenant to such land and
binding on that granted, and passes by a subsequent convey-
ance of the dominant estate without express mention in the
conveyance.

7. The grantee of land subject to a railroad right of way for the
benefit of an adjoining parcel cannot maintain condemnation
proceedings because of the building and use of a spur track to
serve such parcel, without showing that such track has been
or is being used in some way not necessary or convenient for
that service, so as to impose an additional servitude upon his
land.

8. It is not essential in such case, in order to defeat the application
for condemnation, that the railway company, relying upon the
easement, should show that the spur track was actually built at
the request of the owner of the parcel served thereby, where it
appears that the track is essential to the beneficial use of such
parcel.

9. The owner of a parcel of land to which a right of way for a rail-
road is appurtenant was properly made a party in condemna-
tion proceedings instituted by the owner of the servient estate
upon the ground that the construction and use of a spur track
over his land was unauthorized.

Appeals from an order of the circuit court for Manitowoc county: Michael Kirwan, Circuit Judge. *Reversed on defendants' appeal.*

For many years prior to February, 1903, William Finnegan owned a tract of land in Brown county fronting on the Fox river. It appeared from the testimony that the land was valuable for manufacturing sites, owing to its proximity to the city of Green Bay and the Fox river. On February 9, 1903, Finnegan deeded a portion of this parcel of land to the petitioner, *Barkhausen,* excepting two strips, each 274 feet in width, one on the north and one on the south of the parcel conveyed to *Barkhausen.* Prior to the execution of this deed, and in 1895, Finnegan entered into a lease with the *Chicago, Milwaukee & St. Paul Railway Company* for a private side track. This track was built in 1896, and extended through the strip of land to the north of the parcel sold to *Barkhausen,* and also a distance of about 343 feet into the land purchased by *Barkhausen.* Aside from this extension there was still another side track extending into the parcel of land purchased by *Barkhausen,* which, however, is of no materiality in this proceeding. The deed from Finnegan to *Barkhausen* contained the following clause:

"It is also understood that the *Chicago, Milwaukee & St. Paul* and the Chicago & Northwestern Railroad Companies have and shall have a joint right of way twenty feet wide across the whole of lot one (1) at a place where the track is now located, extended in a straight line across said lot."

Lot 1, above referred to, included the parcel of land sold to *Barkhausen* and the strips of land adjacent thereto on the north and south retained by Finnegan. On March 13, 1907, Finnegan conveyed to *J. W. Keogh* the strip of land lying to the south of the *Barkhausen* tract. It appeared from the testimony that *Keogh* bought with a view of erecting a manufacturing plant, and was intending to engage in the manufacturing business upon the site so conveyed.

On November 20, 1908, the *Chicago, Milwaukee & St. Paul Railway Company* extended its track through the *Barkhausen* tract and into the *Keogh* tract to a point near the south line thereof. The track extension of 1908 ran a distance of 470 feet on the land conveyed to *Barkhausen*, extending in a straight line from the portion of the track built on said parcel of land at the time *Barkhausen* purchased the same. Since its construction the *Chicago, Milwaukee & St. Paul Railway Company* has operated over said track, and the Chicago & Northwestern Railway Company has also operated over said track under a lease from the *Chicago, Milwaukee & St. Paul Railway Company.*

On November 25, 1908, *Barkhausen* began condemnation proceedings, and prayed for an order appointing commissioners to appraise and determine the value of the land taken by the railway companies. The *Chicago, Milwaukee & St. Paul Railway Company* answered, setting up, in substance, that it had the right to appropriate the twenty-foot strip of land for right-of-way purposes under the clause in the deed from Finnegan to *Barkhausen* hereinbefore set forth. The Chicago & Northwestern Railway Company did not interpose any answer, and on the hearing the proceeding was dismissed as to that company. *Keogh* appeared and answered, setting up substantially the same facts that were set up by the *Chicago, Milwaukee & St. Paul Railway Company.*

The court made an order appointing commissioners to assess the petitioner's damages, but provided in the order that the petitioner was "not entitled to any compensation for the use or operation which said *Chicago, Milwaukee & St. Paul Railway Company* has hitherto made, or shall hereafter lawfully make, of said side track at the request of the owner or lessees of the tract of land adjoining the aforesaid lands of the petitioner on the south, and for the purpose of any lawful use thereof, or business conducted thereon, by such owners or lessees aforesaid, while a certain provision in the deed

from William Finnegan and wife, conveying said land to petitioner, which provision relates to a right of way across said land, remains in force."

Both parties appeal from the order.

For the petitioner there was a brief by *Minahan & Minahan,* and oral argument by *R. N. Minahan.*

. For the *Chicago, Milwaukee & St. Paul Railway Company* and *John W. Keogh* there were briefs by *Greene, Fairchild, North & Parker,* and oral argument by *B. H. Stebbins.*

The following opinion was filed February 1, 1910:

Barnes, J.    By his deed of conveyance to *Barkhausen,* Finnegan conveyed all of a certain described parcel of land except two strips, each 274 feet in width, one lying immediately north and the other immediately south of the parcel conveyed.    The deed was silent as to the ownership of these two parcels.    It did not expressly state that the right-of-way clause was inserted therein because of the benefit that would result therefrom to the parcels of land in question or to either of them.    The writing was sufficiently ambiguous to warrant the admission of extraneous evidence to show the circumstances which surrounded the parties at the time it was executed.    *Bridger v. Pierson,* 45 N. Y. 601; 2 Page, Contracts, § 1123; *Merriam v. Field,* 29 Wis. 592; *Lego v. Medley,* 79 Wis. 211, 48 N. W. 375; *Mayer v. Goldberg,* 116 Wis. 96, 92 N. W. 556, and cases cited.    From such evidence it appeared that Finnegan was in fact the owner of the south strip when the deed was made, and that it was valuable chiefly for factory sites.    A spur track is a valuable, if not an indispensable, adjunct to such a site.    The construction of such a track can be compelled only when the owner or lessee of the industry pays the cost of building the spur and of securing the right of way therefor.    Ch. 352, Laws of 1907 (secs. 1797—11m, 1797—12n, Stats.).    So, when the circumstances which surrounded the parties are

shown, it is obvious that Finnegan had an immediate interest to subserve by inserting the provision in the deed which is found therein in reference to right of way.

In construing deeds, as in construing other contracts, the fundamental inquiry is, What was the intention of the parties? Wherever this intention is apparent, the language used will be so construed as to effectuate it, provided such language is reasonably susceptible of such interpretation. *Fischer v. Laack,* 76 Wis. 313, 320, 45 N. W. 104; *Pritchard v. Lewis,* 125 Wis. 604, 610, 104 N. W. 989; *Chicago, M. & St. P. R. Co. v. H. W. Wright L. Co.* 123 Wis. 46, 50, 100 N. W. 1034; *Williams v. Jones,* 131 Wis. 361, 366, 111 N. W. 505; *Western L. & C. Co. v. Copper River L. Co.* 138 Wis. 404, 412, 120 N. W. 277; *Martin v. Cook,* 102 Mich. 267, 60 N. W. 679, and cases cited; *Coudert v. Sayre,* 46 N. J. Eq. 386, 19 Atl. 190; *Whitney v. Union R. Co.* 11 Gray, 359. We entertain no doubt that Finnegan inserted the clause in question in his deed to *Barkhausen* for his own benefit as owner of the tract of land afterwards conveyed to *Keogh,* which adjoined that sold and which could not well be reached by a spur track that did not pass over the land conveyed to *Barkhausen.* This parcel of land was purchased by *Keogh* for a manufacturing site, and he was about to erect a manufacturing plant thereon when the spur track was built. The able trial judge was right in holding that the right-of-way provision in the deed was one which inured to the benefit of the grantor therein, and which was in fact inserted for his benefit as owner of the adjacent parcel of land.

It is no less apparent that the language used is a covenant. The word "understood," as used in the sentence in question, is synonymous with the word "agreed." *Higginson v. Weld,* 14 Gray, 165, 170. By accepting the deed, the agreement contained therein, in form, became as binding upon the grantee as if he had in fact signed the instrument. *Hutchinson v. C. & N. W. R. Co.* 37 Wis. 582, 602. Words of cove-

nant are as effectual as words of grant. *Boyden v. Roberts,* 131 Wis. 659, 670, 111 N. W. 701.

Whether or not the language used in the deed technically created a reservation is immaterial. Finnegan had a perfect right to make a reservation for his own benefit, and we do not feel called upon to decide, on the record presented, whether a reservation in a grant of land for the benefit of a third person is void, as is stated in *Strasson v. Montgomery,* 32 Wis. 52.

"When it appears by the true construction of the terms of a grant that it was the well-understood purpose of the parties to create or reserve a right, in the nature of a servitude or easement, in the property granted, for the benefit of other land owned by the grantor, no matter in what form such purpose may be expressed, whether it be in the form of a condition, or covenant, or reservation, or exception, such right, if not against public policy, will be held to be appurtenant to the land of the grantor, and binding on that conveyed to the grantee, and the right and burthen thus created and imposed will pass with the lands to all subsequent grantees." *Coudert v. Sayre,* 46 N. J. Eq. 386, 395, 19 Atl. 190; *Hagerty v. Lee,* 54 N. J. Law, 580, 25 Atl. 319.

This rule is stated in substantially the same language in *Whitney v. Union R. Co.* 11 Gray, 359, 365, and in substance in *Avery v. N. Y. C. & H. R. R. Co.* 106 N. Y. 142, 12 N. E. 619; *Post v. Weil,* 115 N. Y. 361, 375, 22 N. E. 145; and *Boyden v. Roberts,* 131 Wis. 659, 669, 111 N. W. 701.

The easement in question, having been created for the benefit of the adjoining land of the grantor, is appurtenant to such land, and passed to *Keogh* by the conveyance of the dominant estate without express mention in the deed of conveyance. *Karmuller v. Krotz,* 18 Iowa, 352, 358; *Tinker v. Forbes,* 136 Ill. 221, 242, 26 N. E. 503; *Boyden v. Roberts,* 131 Wis. 659, 669, 111 N. W. 701; *Borst v. Empie,* 5 N. Y. 33; *Morgan v. Mason,* 20 Ohio, 401; *Kent v. Waite,* 10 Pick. 138; *Hinchliffe v. Kinnoul,* 5 Bing. N. C. 1; *U. S. v.*

*Appleton,* 1 Sumn. 492, 502, Fed. Cas. No. 14,463; *Lansing v. Wiswall,* 5 Denio, 213; *Cathcart v. Bowman,* 5 Pa. St. 317.

The circuit court held, in substance, that the petitioner was not entitled to recover any damages because of an extension of the spur track to the parcel of land purchased by *Keogh,* provided it was built at *Keogh's* request and was used exclusively to serve any legitimate business that might be conducted on such site. Further, that any other or additional use to which the spur track might be put imposed an additional servitude on the land sold to *Barkhausen,* for which he was entitled to compensation, and commissioners were appointed upon the theory that, on the record made, an additional burden had been in fact imposed. This conclusion was reached because the defendant railway company asserted in its answer the right to use the twenty-foot strip for railway purposes generally, and because it was not shown that the spur track was built at *Keogh's* request. The record is barren of all proof to show that the spur track had been used for any purpose except to serve *Keogh.* Such track terminated upon his land; it did not extend to the river; it does not appear that it was used for the storage of cars, and it is difficult to see how it could have been used for any other purpose than to serve *Keogh,* except for the storage of cars. In any event, if it were so used, it should not be difficult to show that fact by proof.

There is much force in the reasoning of the learned trial judge to the effect that the railway company could not rely on the covenant under consideration unless it showed that the spur track was actually built at *Keogh's* request, which it failed to do. But the real question would seem to be whether the spur track was necessary for the beneficial use of the land conveyed to *Keogh.* On this point *Keogh* states, in his verified answer to the petition for condemnation, that he bought the 274-foot strip in question for manufacturing purposes and is about to erect and operate a large manufacturing

plant thereon, and that the side track is necessary for the erection and operation of such plant, and that he bought his site relying on the covenant contained in the deed to petitioner. This at least amounts to a positive declaration on his part that the side track is not only useful, but is essential to a full enjoyment of his land for the purpose for which he bought it.

The railway company having the right to build the spur track for *Keogh's* accommodation, it was incumbent upon the petitioner to show a taking of the right of way for some other and additional purpose before he was entitled to have commissioners appointed. After issue was joined, and before the order appealed from was entered, the railway company filed a writing in court by which it disclaimed any right, title, or interest in the twenty-foot right-of-way strip in question, save such right, title, or interest as it had therein by virtue of the provision contained in the *Barkhausen* deed. By virtue of the covenant in the *Barkhausen* deed the railway company had the right to build a spur track across petitioner's land for the purpose of serving the wants of *Keogh* as owner of the 274-foot strip on the south. Besides the assertion contained in *Keogh's* answer there is at least some proof to show that the track was essential to enable *Keogh* to use his land for the purpose for which he purchased it. The railway company did build such a spur track. There is no showing made that it was used for any purpose other than to serve the real estate to which the right of way over the *Barkhausen* land was appurtenant. The railway company disclaims any purpose or intention of using it for a purpose not contemplated and not authorized by the covenant contained in the deed to petitioner. Under such conditions we fail to see where the petitioner had shown any taking of his land by the railway company, or wherein he was entitled to recover any damages.

From the view we take of the case it is apparent that

*Keogh* was properly made a party in the condemnation proceedings.

*By the Court.*—The order of the circuit court is reversed on the appeal of the *Chicago, Milwaukee & St. Paul Railway Company* and *John W. Keogh,* but without prejudice to the right of the petitioner to institute other condemnation proceedings in the future in case the right-of-way strip across his land is being used for a purpose not warranted by the covenant contained in his deed, and the cause is remanded with direction to dismiss the condemnation proceeding.   Ordered further that petitioner take nothing by his appeal.

The following opinion was filed April 5, 1910:

BARNES, J.   The petitioner has filed a brief containing sixty-eight pages of printed matter in support of a motion for rehearing, in which it is argued with elaboration and reiteration that the decision of this court deprives the petitioner of his property without reward or compensation, and is contrary to well-settled legal principles.   If this be true, an egregious blunder has been committed which should be remedied while it may be.   But is it true?   When the petitioner bought his land he bought it under an agreement contained in his deed that the railway companies should have a "joint right of way twenty feet wide across the whole of lot 1 at a place where the track is now located, extended in a straight line across said lot."   It is admitted that the side track is built on the line indicated.   Now, did petitioner buy and pay for the fee in the land, or did he buy and pay for the fee subject to the easement agreed upon?   Did Finnegan sell him the fee, or sell only the fee subject to such easement?   What did petitioner purchase and pay for, and what did Finnegan sell and receive pay for?   Finnegan owned the factory site lying to the south of the land sold petitioner.   Its value might largely depend on side-track facilities.   Indeed,

the sale might not have been consummated at all without the right-of-way privilege. Now, it may be that petitioner thought he knew, or was advised, when he made his purchase that the provision referred to in his deed was what is technically known in law as a reservation; that such reservation was for the benefit of strangers to the deed, and that this court had once intimated, if not held, that such a reservation was void; and that the deed simply contained a "joker," the joke being upon the grantor, who thought he was holding out something when in fact he was conveying the entire fee. It is not supposable that the grantor had any such light upon the subject. He was attempting at least to impose a servitude upon the fee conveyed and was accordingly fixing his price upon the thing parted with. So that if petitioner got what he now claims to own, he got it inadvertently and without paying for it, and because his grantor failed to use suitable and appropriate language in his deed to express his intention. It is apparent, therefore, that the fight of the petitioner here is not so much to get pay for something that belongs to him as of right as it is to get something for nothing.

This court held, as did the trial court, that the clause in the deed was a covenant, and nothing has been said to shake our conviction that such view was correct. It also held that the clause was sufficiently ambiguous to admit parol evidence of the circumstances which surrounded the parties when the deed was made, and we see no reason for receding from this view. Those circumstances disclosed the interest which Finnegan had in providing for the easement. It was valuable in connection with the other land which he owned, and it was a logical and correct conclusion to draw that the easement created or reserved was appurtenant to such land and passed with it to Finnegan's grantee. The decisions cited in support of this proposition of law are directly in point and we believe are correct in principle.

From this point the case presents a very simple question, notwithstanding the claim of petitioner that he was misled

and deceived, and compelled to go into court to preserve his right, and that he is now being wrongfully turned out, with costs imposed on him for having ventured in. The railway companies had the right to construct a side track to serve *Keogh,* who was Finnegan's grantee. They might build such a track without paying any tribute to petitioner and without his leave. If such track were put to any additional use, an additional servitude would thereby be imposed on petitioner's land, for which he would be entitled to compensation. Whether or not it had been or was being so used was a pure question of fact which would easily be susceptible of proof. If the spur track was being so used when the condemnation proceedings were started, they were well founded; if not, they were not. Was the spur track used to serve other patrons of the railroad than *Keogh,* or was it used for the storage of cars or in some other manner not necessary or convenient for his service? If not, petitioner had suffered no damage. It rested with petitioner to establish the affirmative of this question as a condition precedent to his right to have commissioners appointed to appraise his damages. He did not do so. We fail to see how the alleged equivocal statements contained in the answer to the petition supplied this lack of proof, and we fail to see how or why petitioner was obliged to bring his proceeding when he did in order to protect himself from the operation of the statute of limitations, unless we assume that he could not ascertain the fact as to when the additional servitude was being imposed upon his land. It is the fact of the imposition of such a burden that is important, and not the secret, undisclosed intentions of the officers of the corporations. It is not apparent how the additional burden could possibly be imposed in any other than an open and notorious manner, readily discoverable by any one interested in the matter.

*By the Court.*—The motion for a rehearing is denied, with $25 costs.