JONES, Plaintiff-Appellant, v. JENKINS, Defendant-Respondent.

Supreme Court

*No. 76–284. Submitted on briefs March 28, 1979.—
Decided May 1, 1979.*
(Also reported in 277 N.W.2d 815.)

714

For the appellant the cause was submitted on the briefs of *Paul E. Feldner* and *Jones & Feldner* of Milwaukee.

For the respondent the cause was submitted on the brief of *Ralph J. Jeka* and *Thurwachter & Jeka* of Milwaukee.

CONNOR T. HANSEN, J. Early in 1973, Jimmie Jenkins retained Robert D. Jones, a lawyer, to represent him in a will contest. On appeal to this court the judgment in favor of Jenkins was affirmed. *Estate of Hamm,* 67 Wis.2d 279, 227 N.W.2d 34 (1975).

In connection with such representation Jones prepared the following fee agreement which was signed by Jenkins:

"Confirming our recent discussions, I am to receive a contingent fee of 10% of the bequest received by you, as a result of my representation of you as proponent of Mr. Hamm's will.

"You are to reimburse me for costs advanced from time to time.

"My fees are to be based upon the amount received by you for estate and inheritance tax purposes."

Essentially the trial court ultimately found the agreement was ambiguous because there was no such sum as "the amount received by you for estate and inheritance tax purposes." We agree with the conclusion of the trial court.

On June 25, 1975, following the decision of this court in *Estate of Hamm, supra,* Jones sent Jenkins a statement for legal services in the amount of $80,393.51. Jenkins did not respond and on July 25, 1975, Jones sent a second statement which indicated that interest would run from that date. On August 2, 1975, Jenkins wrote Jones to explain that as soon as he knew what he was getting from the estate he would instruct the personal representative to pay Jones the 10 percent agreed on. Jenkins' letter said that he had not as yet reported anything to the state or federal government and had no way of knowing the amount he was to receive as set forth in the fee agreement. Jones responded by letter which said, among other things,

"As you well know, we discussed the contingent fee agreement and decided that 10% of your gross share of the estate would probably be more to your advantage than 33⅓% of the net estate. The agreement clearly indicates your decision and as it turned out, it was a profitable choice for you."

The correspondence degenerated from this point on with Jenkins finally sending Ralph Jeka, the personal representative and Jenkins' lawyer in this action, a

letter instructing him to pay Jones, at the time of the final distribution, 10 percent of the net amount Jenkins would receive from the estate. Jones then commenced this action. Prior to trial of the instant case, Jones was paid $40,000, a sum which had been awarded to Jenkins for lawyers' fees by the probate court pursuant to sec. 879.37, Stats.[1]

Jones testified that he computed his fee for the first statement by using the gross estate figure from the federal estate tax return, deducting expenses and specific bequests and then computing Jenkins' 85 percent share of the residuary estate. Jones said by the time of trial he had recomputed the fee using the gross estate figure from the Wisconsin inheritance tax return, a figure he said he would have used initially if he had been able to get that return from Jenkins. In support of his claim for fees, Jones offered an exhibit which was received in evidence. The exhibit purports to show the amount of the gross share of the estate received by Jenkins and from this figure Jones has computed his fee to be $83,-039.96, including interest from July 25, 1975.

The trial court reserved its ruling on whether the agreement was ambiguous and permitted the parties to testify regarding their understanding of the agreement and the circumstances of its execution.

Jones testified that he and Jenkins did not discuss fees at first, but that in March, 1973, he informed Jenkins of two possible methods of computing the fee, either one-third of the bequest Jenkins actually received or 10 percent of the gross bequest before taxes. He said he told Jenkins that the latter method would be the better deal for Jenkins and that Jenkins agreed to this method and told Jones to work out an agreement. Jones prepared the

[1] Sec. 879.37, "**Attorneys fees in contests.** Reasonable attorney fees may be awarded out of the estate to the prevailing party in all appealable contested matters, . . ."

agreement set out herein and gave it to Jenkins on March 23, 1973. Jones said they did not discuss the agreement in any detail that day and that Jenkins took the agreement home to study it. Jenkins returned the signed agreement on March 27, 1973.

Jones further testified they never discussed when the fees would be payable or whether the fee would be based on the federal or state tax return figures or on the assets actually transferred to Jenkins. Jones said Jenkins appeared to understand the alternatives relating to the share before taxes versus the amount actually received. He said Jenkins knew taxes would be imposed on the estate and that he had explained to him that the taxes would be substantial. He said he understood that Jenkins would pay the fee when he received the assets and that this would occur shortly after the appeal was resolved.

Jones further testified he intended the fee to be 10 percent of Jenkins' gross share before either state or federal taxes were deducted. The fee was to be based on the data in both returns even though the federal estate tax return used an asset valuation date six months after death and the state return used the date of death value. He said they had agreed the date of death value would be used. Jones was also of the opinion that when he sent the second statement to Jenkins that Jenkins and Jeka were delaying the distribution to prevent payment of the fees.

Jenkins testified that he never discussed the fee agreement with Jones, that Jones merely gave him the agreement on March 23, 1973, said they could have gone different ways and that Jenkins should read the agreement. Jenkins said he read the agreement for two or three minutes then signed it and returned it to Jones. He claimed he had never heard the word "one-third" mentioned, and said that he thought the alternatives were 10 percent before taxes or 10 percent after taxes and

that because Jones had explained that the taxes would be substantial the latter method would be the best. He said he did not date the agreement March 27, 1973, and Jones stipulated to that fact.

Jenkins also testified he understood the fee would be 10 percent of his bequest after the taxes were paid. It was his testimony that Jones never mentioned how the fee would be computed or when it was due, and that he really didn't understand the estate and inheritance tax setup beyond knowing that both he and the estate would pay taxes. Jenkins said he couldn't believe the bill when he received it, that he had thought "substantial" taxes would mean about half the estate and that he would have to pay only 10 percent of his share after that.

Ralph J. Jeka, Jenkins' lawyer in this trial, testified that he had been appointed personal representative on June 10, 1975. He said the state inheritance tax return had just been filed and that no final distribution had been made, however Jenkins had been advanced the $40,000 lawyer's fee awarded by the probate court and $100,000 in securities were placed on deposit with the clerk of court as security in this action.

In its decision the trial court first concluded that the agreement was ambiguous because federal estate tax involved different deductions and was based on different valuations than state inheritance tax and a question existed as to which figure should be used as a basis for the fee computation. The trial court determined that the two alternatives Jones testified to were in fact mentioned to Jenkins and therefore found that the parties agreed that the 10 percent figure should be used in computing the fee of Jones. However the trial court concluded that Jones' computation was inconsistent with his contention of no ambiguity because he ignored the federal estate tax return even though the agreement referred to estate taxes. In order to give effect to the reference

to both estate and inheritance taxes the trial court determined that the fee computation must take the estate taxes into consideration by using the taxable estate for inheritance tax purposes as a basis for the computation because this figure reflects the federal estate tax deduction. The trial court then proceeded to compute the fee on what it determined to be a reasonable interpretation of the ambiguous fee agreement. The trial court found that the fee was to be paid when the estate was distributed and further held that prejudgment interest could not be awarded because the final distribution had not as yet been made. In a supplemental decision the trial court determined that neither party should be awarded costs.

Judgment was entered on September 9, 1976, awarding Jones an additional $20,155.31 in fees, and this appeal by Jones follows.

The issues presented on appeal are:

1. Whether the fee agreement as construed by the trial court is against the great weight and clear preponderance of the evidence;

2. whether Jones is entitled to prejudgment interest; and

3. whether interest from the entry of the judgment should be computed at five percent or seven percent.

Basically, in computing the fee entitlement of Jones, the trial court determined that he was entitled to a fee of 10 percent of Jenkins' distributive share of the estate after deduction of federal estate taxes but before the deduction of state inheritance taxes.

On appeal, Jones contends that the trial court's findings are contradictory because he found that the parties intended that the 10 percent be applied to respondent's share of the estate before the payment of death taxes, then computed the fee using respondent's share after federal estate taxes had been deducted.

Jenkins contends that in light of the irreconcilable conflict between values on the two returns the trial court was compelled to construe the contract against Jones, the drafter, and in doing so reached the only reasonable interpretation of the whole contract.

This court has repeatedly said that the construction of a written contract is a question of law for the court which may be reviewed independently on appeal. However, where an ambiguity exists in the contract which requires resort to extrinsic evidence, the question is one of fact and this court will not disturb the trial court's findings unless they are against the great weight and clear preponderance of the evidence. *Pleasure Time, Inc. v. Kuss,* 79 Wis.2d 373, 379, 254 N.W.2d 463 (1977) ; *Patti v. Western Machine Co.,* 72 Wis.2d 348, 353, 354, 241 N.W.2d 158 (1976) ; *Lemke v. Larsen Co.,* 35 Wis.2d 427, 431, 151 N.W.2d 17 (1967).

A contract provision which is reasonably and fairly susceptible to more than one construction is ambiguous. *Garriguenc v. Love,* 67 Wis.2d 130, 135, 226 N.W.2d 414 (1975) ; *Sipple v. Zimmerman,* 39 Wis.2d 481, 496, 159 N.W.2d 706 (1968). In interpreting an ambiguous provision the court will select that construction which gives effect to each word or provision of the contract in preference to a construction which results in surplusage. *Farley v. Salow,* 67 Wis.2d 393, 403, 227 N.W.2d 76 (1975) ; *Marion v. Orson's Camera Centers, Inc.,* 29 Wis.2d 339, 344, 138 N.W.2d 733 (1966). The court cannot redraft the agreement, but must adopt that construction which will result in a reasonable, fair and just contract as opposed to one that is unusual or extraordinary. *Carey v. Rathman,* 55 Wis.2d 732, 738, 200 N.W.2d 591 (1972). Ambiguous wording will be construed against the drafter provided the contract is also construed as a whole. *Farley v. Salow, supra,* at 400, 401.

When called upon to judicially construe an ambiguous contract the court is called upon to determine what the parties contracted to do, ". . . 'not necessarily what they intended to agree to, but what, in a legal sense, they did agree to, as evidenced by the language they saw fit to use' " *Marion v. Orson's Camera Centers, Inc., supra,* at 345. Where the acts of the parties are inconsistent indicating different constructions, the court will look to the purpose of the contract and the circumstances surrounding its execution to determine the intent. *Carey, supra,* at 739. If possible, contradictory statements in a contract must be harmonized, but where it is impossible to give meaning to both parts the court must determine which is to be given effect. *Chicago, M. & St. P. R. Co. v. H. W. Wright Lumber Co.,* 123 Wis. 46, 51 100 N.W. 1034 (1904).

". . . As has often been said, the construction or meaning intended to be conveyed by the words of a writing is seldom aided by argument or precedents. The one charged with the duty of construction must assume that parties intended to express that which the words used convey to his mind. . . ." *Id.* at 50.

The problem here is created by the following language in the fee agreement:

". . . a contingent fee of 10% of the bequest received by you, . . ." and,
"My fees are to be based upon the amount received by you for estate and inheritance tax purposes."

The evidence clearly shows that Jones intended this language to mean 10 percent of respondent's share of the estate before either estate or inheritance taxes were deducted. The evidence also clearly shows that Jenkins intended to agree with whatever Jones said was the better deal and that Jenkins misunderstood what that

method was. Certainly Jenkins' explanation that he thought the alternatives were 10 percent before or 10 percent after taxes cannot be given credence because if he had given that theory any thought he would have realized it presented no choice at all. The finding of the trial court that the parties intended that the fee be 10 percent of Jenkins' share before the payment of the death taxes is amply supported by the evidence.

However, contrary to Jones' contention, reaching this conclusion does not compel an award to him of the full amount claimed. Because the parties had contrary understandings of the agreement, the trial court had to look at the language of the agreement itself and the result of the possible constructions. The question therefore remained as to how the parties' intent and the language of the agreement were to be applied to the actual computation of the fee. Federal estate tax, in a case such as this, is calculated on the taxable estate with the possibility of using the lower of two valuation dates. It is a tax against the estate and is paid by the estate. Whatever Jenkins' share of the estate might be does not affect the amount of the federal estate tax. The federal estate tax can be paid, as it was here, before the beneficiaries have been determined. The phrase, "the amount received by you for estate . . . tax purposes," is meaningless.

The Wisconsin inheritance tax is, on the other hand, a tax on the right to receive and is computed on each individual's share of the estate after federal estate taxes have been deducted. *In Matter of Estate of Stevens,* 74 Wis.2d 1, 5, 245 N.W.2d 673 (1976). This tax cannot be computed until the beneficiaries and their respective bequests are known. Although the inheritance tax is often paid by the personal representative out of estate assets, it is a tax personal to each beneficiary. The amount

received by a beneficiary "for inheritance tax purposes" is set forth in the Wisconsin inheritance tax return.

Jenkins' bequest was 85 percent of the residuary estate, in effect, 85 percent of the estate after specific bequests, expenses and federal taxes had been deducted. In an attempt to produce a figure that would represent the amount received by Jenkins for estate and inheritance tax purposes Jones used the state tax return figures but without deducting the federal tax, in effect increasing Jenkins' bequest by that amount of federal estate tax which is proportional to his share of the estate. However, because of the varying deductions and valuations used in preparing the two returns, the figure Jones ultimately arrives at for Jenkins' share of the estate is one which has no existence in the practical reality of estate and inheritance taxes. Because of the ambiguous language of the fee agreement it appears Jones was the only one who knew how to arrive at the figure he had in mind.

We conclude that the drafter of the agreement failed to prepare an unambiguous contract. Therefore, the trial court's determination that the fee should be computed on "the amount received for . . . inheritance tax purposes" is not against the great weight and clear preponderance of the evidence. The trial court could not give effect to the phrase "amount received by you for estate . . . tax purposes," and so construed the agreement in the most reasonable way. The trial court's explanation that he was giving effect to the reference to estate taxes by deducting them was unnecessary and only served to confuse the issue. This actually appears to be a situation in which, construing the contract against the drafter, a meaningless phrase must be labeled surplusage and disregarded because it cannot be construed to harmonize with the remainder of the agreement. The only way to harmonize

the phrase is to apply the strained construction Jones proposes, and disregard both what the agreement says and what Jenkins understood it to mean. The trial court's computation is a reasonable interpretation of the language of the fee agreement and is sustained.

Jones also contends that he should have been awarded prejudgment interest from July 25, 1975, the date of his second statement, because the fee was fixed and payable on that date. In urging this contention Jones assumes that this court will allow the full fee originally claimed by him.

The trial court considered the case as one for a declaratory judgment construing the terms of the contract, and not as an action for money due and owing. The trial court therefore denied prejudgment interest because Jones' fee did not have to be paid until the assets had been distributed, an event which had not occurred as of the time of trial. The trial court also found that Jenkins and the personal representative had not unreasonably delayed that distribution, and in our view the record supports this finding. No evidence was introduced to prove that the distribution had been deliberately or unreasonably delayed.

Further, prejudgment interest is not to be awarded where there is no "reasonably certain standard of measurement by which one can ascertain the amount he owes." *Wyandotte Chemicals Corp. v. Royal Electric Mfg.*, 66 Wis.2d 577, 585, 225 N.W.2d 648 (1975). Where the dispute goes to the very method of calculating the amount owed, prejudgment interest is not appropriate. In *Giffen v. Tigerton Lumber Co.*, 26 Wis.2d 327, 132 N.W.2d 572 (1965), a case involving a lawyer's fee, this court said that a difference of opinion regarding the

amount due would not be an excuse for not making payment. The court allowed prejudgment interest because the client admitted owing something and therefore should have tendered the amount it thought reasonable to stop the running of interest at least to that extent. However, in *Giffen,* unlike the present case, the fee was due at the time the lawyer billed the client. In addition, Jenkins here did make a partial payment, albeit under court order, of the $40,000 allowed to him by the probate court for lawyer's fees. The trial court correctly denied prejudgment interest.

Finally Jones contends that the trial court erred in ordering interest from the date of entry of judgment at the rate of five percent. Sec. 815.05 (8), Stats., provides:

"(8) Every execution upon a judgment for the recovery of money shall direct the collection of interest at the rate of 7% per annum on the amount recovered from the date of entry thereof until paid."

The seven percent rate was substituted in this subsection for the phrase "at the legal rate" by section 2 of Chapter 141 of the Laws of 1971. In section 1 of that same chapter the same change was made in sec. 814.04 (4), regarding interest from the verdict to the entry of judgment. The legislative intent clearly establishes interest at seven percent from the date of the verdict to the date of payment. The judgment is modified to provide interest at the rate of seven percent from the date of entry of the judgment until paid. As modified, the judgment is affirmed. No costs are to be taxed by the respondent.

*By the Court.*—Judgment modified, and as modified affirmed.

COFFEY, J., took no part.