WAUSAU JOINT VENTURE, an Ohio partnership; Wausau Penney Investor Joint Venture, an Ohio general partnership; J.C. Penney Company, Inc.; H.C. Prange Company; and Sears, Roebuck & Co., Plaintiffs-Appellants,

v.

The REDEVELOPMENT AUTHORITY OF the CITY OF WAUSAU, Wisconsin; the City of Wausau, Wisconsin; and the Wausau Parking Utility, Defendants-Respondents.†

Court of Appeals

*Nos. 83–1519, 83–1759. Submitted on briefs December 19, 1983.— Decided February 1, 1984.*
(Also reported in 347 N.W.2d 604.)

---

† Petition to review denied.

For the appellants the cause was submitted on the joint briefs of *Samuel J. Recht, Michael J. Spector* and *Quarles & Brady* of Milwaukee, *John W. Stevens* of Wausau, and *Edward H. Crane* of Cleveland, Ohio, of counsel.

For the respondents the cause was submitted on the briefs of *Terwilliger, Wakeen, Piehler, Conway & Klingberg, S.C., Herbert Terwilliger* and *Rhea A. Myers* of Wausau.

Before Foley, P.J., Dean and Cane, JJ.

CANE, J. Appellants, developers and tenants (developers) of the Wausau Center shopping mall, appeal an order denying their motion for a temporary restraining order and temporary injunction and a judgment dismissing their complaint.[1] The issue on appeal is whether the

---

[1] This court granted the developers leave to appeal the nonfinal order denying their motion for a temporary restraining order and

developers have a valid, enforceable contract with the Redevelopment Authority of the City of Wausau (authority), the Wausau Parking Utility,[2] and the City of Wausau (city), setting specific parking rates for two Wausau Center parking structures. The trial court concluded that the developers had no such enforceable contract because the city "does not have the power to delegate the authority to set rates and such action would be unconstitutional." Because the question of whether the developers were entitled to temporary relief has become moot, we affirm the order. Because the city had the authority to enter into a contract concerning rates to be charged in the Wausau Center parking structures, we reverse the judgment and remand this matter with directions to the trial court to reinstate the complaint and for further proceedings consistent with this opinion.

The parties have presented arguments concerning the merits of three hours versus one hour of free parking. We express no opinion on this controversy because that was a policy decision strictly between the city and the developers. Our decision is based solely on our conclusion that the city, acting within its lawful authority, made a binding contract that requires it to provide free parking for three hours in the Wausau Center parking structures. The parties may revise the parking rates pur-

---

temporary injunction, but denied their request for a temporary injunction pending appeal. Case No. 83–1519. The trial court then entered judgment dismissing the complaint pursuant to a stipulation of the parties in order to place the case before this court in the posture of a final decision. The judgment was also appealed. Case No. 83–1759. This court ordered consolidation of the two appeals.

[2] The defendants allege that the parking utility was dissolved by the city council in 1981. As such, it could not be a proper party to this action. If the parking utility remains in existence, its obligations and liability under the contract are as discussed in this opinion in reference to the city.

suant to the contract, but until they have done so the city must fulfill its contractual obligation.

The parties signed a number of contractual documents concerning the Wausau Center development. In October, 1979, the developers and the authority signed a redevelopment agreement by which the authority agreed to "operate or cause to be operated" parking facilities in accordance with a ground and air rights lease attached to the agreement. By the agreement, the developers and the authority acknowledged that the lease "may have to be modified prior to execution." The lease was for a term of thirty-five to eighty-five years. It did not specify the rates to be charged in the parking structures, but did provide that the rates "shall be on a graduated basis (viz. increasing hourly charges) . . . which will encourage the availability of the Parking Facilities for patrons of the Shopping Center."

Also attached to the agreement were "Consent and Joinder" forms executed by the parking utility and the city. The consenting parties agreed to perform any duties ascribed to the authority under the agreement that were statutorily or customarily duties of the consenting parties, and bound them to the agreement, "all pursuant to such bilateral or multilateral contracts and funding agreements, which such parties have entered into or will hereafter make in connection with their respective performance of the duties imposed . . . ."

In February, 1980, the authority, the parking utility, and the city entered into a cooperation agreement. The authority agreed to construct and operate two parking structures, and the other parties agreed to provide such services and facilities and to perform as requested by the authority if not in conflict with the law.

On November 1, 1980, the ground and air rights lease was amended to include the following terms:

[T]he parking rates to be charged to any and all patrons of the Parking Structures should be on a graduated basis (viz. increasing hourly charges) for parking which will encourage the availability of the Parking Structures for patrons of the Shopping Center;

The parties agree that the following parking rates satisfy the above criteria at this time: Free parking for the first three (3) hours; fifty-cents (50¢) for the fourth (4th) hour; seventy-five cents (75¢) for the fifth (5th) hour; and One Dollar ($1.00) for each hour thereafter, except that patrons arriving between 7:00 A.M. and 9:15 A.M. shall be charged commencing with the rate specified for the fifth (5th) hour;

The parties agree, upon the request of either or any Department Store Sublessee, to work with each other on revisions from time to time of the parking rate structure of the Parking Structures in order to accomplish the above objective.

The authority also signed separate agreements, containing essentially the same language concerning parking rates, with individual developers. The Wausau City Council passed a resolution on November 25, 1980, approving the various updated documents, including an amended cooperation agreement.

In spite of its previous consents and approvals, the city council enacted a parking resolution in October, 1982, that provided for only one hour of free parking in the Wausau Center structures, with rates graduated from twenty-five cents to one dollar for additional hours of parking. The developers commenced this action on August 3, 1983, the day the Wausau Center officially opened. The parking rates established by the city were effective August 8. Effective September 3, the parties stipulated that, pending final judgment, persons parking in the Wausau Center parking structures would not be charged for the first three hours of parking. The developers agreed to pay the fees not charged to parkers for the second and third hours if they failed to prevail in

the lawsuit. The parties also stipulated to judgment on the pleadings dismissing the complaint in order to place before this court the issue of the city's authority to enter into a contract concerning parking rates.

## TEMPORARY RESTRAINING ORDER

Appeal of the trial court's order became moot when the developers obtained the objective sought by their motions for a temporary restraining order and a temporary injunction through a stipulation establishing the parking rates effective until final judgment in this litigation. *See Family Savings & Loan Association v. Barkwood Landscaping Co.,* 93 Wis. 2d 190, 207, 286 N.W.2d 581, 589 (1980). As a general rule this court will not render a decision on a moot controversy. *Hahner v. Board of Education Wisconsin Rapids,* 89 Wis. 2d 180, 185, 278 N.W.2d 474, 476 (Ct. App. 1979). We therefore affirm the order and consider the substantive issues in the context of the judgment dismissing the complaint.

## EXISTENCE OF A CONTRACT

The existence of a contract between the parties is not seriously questioned. Although the authority was the only defendant that signed the lease, the city and parking utility each joined in the lease by executing a broad consent and joinder to the redevelopment agreement. The redevelopment agreement expressly incorporates the lease and recognizes that the lease may need to be modified prior to execution. The consent and joinder documents also recognize this possibility by binding the municipal parties "pursuant to such bilateral or multilateral contracts . . . which such parties have entered

into or will hereafter make" relating to their duties under the agreement. The consents were not a "blank check" for the authority and the developers, however, since sec. 66.431(9)(a)2, Stats., requires any lease that may extend beyond five years to be approved by the local legislative body. The city council has by resolution approved the lease and its amendment, including the language concerning parking rates. In addition, the respondents do not challenge the validity of the amended lease as a whole, and their final brief acknowledges that "[t]he city does not deny an obligation to the plaintiffs under the ground and air rights lease."

The primary defenses of the authority and the city are that the contracts between the parties cannot be interpreted as setting specific parking rates, and that even if they can, the contracts are to that extent unenforceable as an illegal delegation of governmental authority. We consider each of these arguments in turn.

## CONSTRUCTION OF THE LEASE

The authority and the city argue that the language in the lease and related contracts does no more than create an obligation "to enact a parking rate structure which will enhance the 'availability' of parking for patrons in the Mall Structures," and that the city promised only to "work with" the developers toward that end. At the hearing on the motion for temporary relief, it was argued that the rates stated in the amended lease were no more than an example of rates that satisfied the "encourage availability" criteria at the time the amendment was agreed upon. The trial court found that "the Contract states that parking rates as follows satisfy the criteria; that is, free parking for three hours. That is not ambiguous."

Construction of the terms of a contract is a matter of law that we decide independently of the trial court. *Jones v. Jenkins,* 88 Wis. 2d 712, 722, 277 N.W.2d 815, 819 (1979). A contract provision that is reasonably susceptible to more than one construction is ambiguous. *Id.* In interpreting an ambiguous contract provision, a court must select the construction that gives effect to each part of the contract and reject constructions resulting in surplusage or unfair or unreasonable results. *Id.* Contract terms being construed should be considered in context. *North Gate Corp. v. National Food Stores, Inc.,* 30 Wis. 2d 317, 321, 140 N.W.2d 744, 747 (1966).

Taken by itself, the language in the lease concerning the specific rates could be construed by reasonable persons as meaning either that the stated rates were established as the initial rates for the parking structures, or that they were merely an example of rates that the parties agreed would satisfy the stated criteria at the time the lease amendment was adopted. Only one construction of the terms taken in context, however, renders a reasonable result.

The lease can only reach a reasonable result if construed as setting initial parking rates as specified, including three hours of free parking. If the parties did not agree on an initial, binding rate structure, the only part of their parking rate agreement with any force is the agreement to "work with each other on revisions from time to time." The agreement that parking rates *"should* be on a graduated basis . . . which will encourage availability" [emphasis added] can also be interpreted as advisory. We cannot conclude that, after agreeing upon a specific rate structure, the parties intended to leave the setting of initial rates under the exclusive

control of the city and imposed only a requirement of cooperation on revisions.

## VALIDITY OF THE CONTRACTS

Since the lease and the related contracts must be construed to require that specific rates, including three hours of free parking, be charged at the Wausau Center parking structures, and since neither the authority nor the city contend that they have operated the structures or caused them to be operated in accordance with those rates, the authority and the city have breached their contract with the developers. Their remaining defense, and the ground upon which the trial court denied relief to the developers, is that the contracts are an illegal delegation of authority.

A municipality may, by contract, curtail its right to exercise proprietary functions but may not surrender or contract away governmental functions or powers without express statutory authorization. *State ex rel. Hammermill Paper Co. v. LaPlante,* 58 Wis. 2d 32, 80, 205 N.W.2d 784, 811 (1973). In this case, the city has contracted to curtail its right to set parking rates in its sole discretion for the two Wausau Center parking structures. It has agreed to be contractually bound by an initial rate structure and to work with the developers on revisions. The city has not delegated any functions to the developers. The developers have no right to set, revise or veto parking rates. That power remains with the city, to be exercised in compliance with or in breach of the contract. The question is whether the city has curtailed its right to exercise a proprietary function or a governmental function under express statutory authorization. We conclude that setting parking rates for the

two Wausau Center parking structures is a proprietary function, and the city could legally curtail, by contract, its right to exercise that function.

A function is governmental when its primary objective is for health, safety, and the public good. *See Town of Hallie v. City of Chippewa Falls,* 105 Wis. 2d 533, 542, 314 N.W.2d 321, 326 (1982). When the primary objective is to alleviate traffic congestion, the provision by a municipality of off-street parking facilities for use by the general public is generally considered a public or governmental, rather than a private, purpose. *See* 56 Am. Jur. 2d *Municipal Corporations* § 214 (1971). In this case, however, the city's primary objective in providing and operating the parking structures was for the private convenience of the mall patrons and the private gain of the Wausau Center enterprises. The parking structures doubtless serve to alleviate traffic congestion. Other factors, however, convince us that the primary purpose for the parking structures was private. The initial rate structure applied only to the two Wausau Center structures and not to municipal parking facilities in general. The contracts require that the structures be physically connected to the shopping center. The documents provide specifications for construction of the structures, including requirements that they contain stairwells "in accordance with the department store exiting requirements," and that the exteriors of the structures be "architecturally harmonious" with the department store exteriors. The developers agreed by contract to reimburse the authority at least $65,000 per year for the costs of the parking facilities. As discussed earlier, availability of parking in the structures for shopping center patrons was a concern written into the parking rate section of the contracts. The contracts cover the

construction and operation of the parking structures in great detail.

We do not hold that municipalities always perform proprietary functions in providing and operating parking facilities in connection with a shopping center development. The terms of the agreements between the parties in this case, however, are sufficient to convince us that the city acted in its proprietary capacity in contracting for the construction and operation of the Wausau Center parking structures. When acting in such a capacity, it had the same power as a private concern and could legally curtail its right to exercise proprietary functions. *See Meier v. City of Madison*, 257 Wis. 174, 181, 42 N.W.2d 914, 917 (1950). Because we conclude that the operation of the Wausau Center parking structures is a proprietary function that the city could legally limit by contract, it is unnecessary to address the other issues raised on this appeal, such as interpretation of the Blight Elimination and Slum Clearance Act, sec. 66.431, Stats.

Although the parties stipulated to present their controversy on appeal in the posture of a final decision, it is necessary to remand this matter for further proceedings. The stipulation was for a judgment dismissing the complaint. Reversal of the judgment requires reinstating the complaint. The trial court was not presented with a procedural vehicle, such as a motion for summary judgment, for disposing of the case in favor of the developers. Had it erroneously denied such a motion, final disposition would be in order. As presented to us, however, this case requires further proceedings to reach judgment.

*By the Court.*—Order affirmed, judgment reversed, and cause remanded with directions to the trial court to reinstate the complaint and for further proceedings consistent with this opinion. Costs to appellants.