SAVE ELKHART LAKE, INC., Gary Kussow and Laurie Kussow, Plaintiffs-Appellants,

v.

VILLAGE OF ELKHART LAKE, Defendant-Respondent,

DAIRYLAND INVESTORS GROUP, Intervenor-Defendant-Respondent.

Court of Appeals

*No. 93–0036. Submitted on briefs July 28, 1993.—Decided December 22, 1993.*

(Also reported in 512 N.W.2d 202.)

779

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Timm P. Speerschneider* of *DeWitt, Porter, Huggett, Schumacher & Morgan, S.C.* of Madison; and *John E. Raftery* of *Hopp, Hodson, Powell & Raftery* of Sheboygan.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Richard Hahn* of *Holden & Hahn, S.C.* of Sheboygan.

On behalf of the intervenor-defendant-respondent, the cause was submitted on the brief of *William R. Steinmetz* and *Katherine McConahay Nealon* of *Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S.C.* of Milwaukee.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

SNYDER, J. The issues in this case revolve around whether the Village of Elkhart Lake exceeded its authority when it entered into an agreement with Dairyland Investors Group (DIG) to develop land around Elkhart Lake. Save Elkhart Lake, Inc. (Save) argues that the agreement is invalid in its entirety because the agreement violates state law and the village unlawfully contracted away its police powers to nongovernmental entities. We agree with the trial court that while two of the provisions in the agreement exceed the village's lawful authority, those invalid provisions are severable and the remainder of the agreement is valid. Accordingly, we affirm.

On December 16, 1991, the village entered into a development agreement with DIG for a combination hotel, residential condominium and recreational facility known as "Project Osthoff." In the agreement, DIG and the village acknowledged that they "desire[d] to cooperate in the development of the Project." Further, the parties agreed "to work cooperatively to accomplish the object of an economically viable Project that will promote the construction of significant public improvements in the Village and reduce the property tax burden of Village residents."

Save filed suit against the village seeking declaratory judgment that the entire development agreement was illegal and a permanent injunction preventing the village from acting under the agreement. Save alleged that the village violated state law when it entered into the agreement and that the promise made between DIG and the village to cooperate toward the goal of

783

making the project successful unlawfully relinquished the village's police powers.[1]

After DIG intervened as a defendant in the action, both parties moved for summary judgment. After a hearing on the motions, the trial court issued an oral ruling in which it held that municipalities generally are not precluded under state law from entering into cooperative agreements with developers. However, the court concluded that certain provisions of the agreement could be interpreted as unlawful in that they improperly delegated government authority to third parties or were *ultra vires*. Therefore, the court directed Save to identify specific portions of the agreement which it alleged to be illegal and whether those provisions invalidated the entire agreement.

Save identified six provisions of the Project Osthoff agreement which it argued were invalid based upon the following: (1) section IV.A.1. unlawfully delegated the village's police power to control its streets and thoroughfares by agreeing to close a street and create a pedestrian walkway;[2] (2) section IV.B. unlawfully

---

[1] The police powers identified by Save that are implicated by the development agreement include road relocation, annexation, rezoning, and the creation of a tax incremental financing district.

[2] Section IV.A.1. of the agreement states in relevant part:

To the extent permitted by Sheboygan County and any other authorities with jurisdiction, the Village shall . . . (a) permanently terminate all vehicular use on such portion of Lake Street as is indicated on the Site Plan to be converted to a pedestrian walkway; and (b) commence removal of the existing roadway on such portion of Lake Street and commence construction of the walkway and related Project Public Improvements designed by DIG. The termination of such usage shall be structured in such a fashion that DIG shall be able to control or limit the use of the walkway by private vendors. . . . DIG agrees that it shall be responsible for the maintenance of the walkway. . . .

restricted the zoning powers of the village;[3] (3) section IV.C. unlawfully delegated the village's police powers by promising to cooperate with DIG to make the project successful;[4] (4) section III.A.7. of the agreement unlawfully delegated village police powers to a citizens committee and DIG for the creation of design criteria for certain public improvements;[5] (5) section IV.A.5.(b) unlawfully delegated governmental powers to DIG by

[3] Section IV.B. of the agreement states in relevant part:

The Village and DIG acknowledge that all potential guests, purchasers and/or users of improvements within the Project are intended to be able to use the private beach to be developed by DIG and that all applicable zoning laws permit same. . . . Accordingly, the Village hereby acknowledges that DIG has vested rights in the beach access permitted by present zoning . . . and covenants that any future ordinance enacted by the Village intended to limit or reduce access to Elkhart Lake or Elkhart Lake frontage shall . . . not apply to the Property.

[4] Section IV.C. states in relevant part:

The Village agrees to assist DIG in processing as expeditiously as possible all applications for permits, approvals, variances, licenses, certificates, rezonings, inspections and consents that may be necessary or desirable to enable DIG to commence and carry out development of the Project within the time frames set forth herein. The parties acknowledge that none of such applications can be awarded or granted except pursuant to and in accordance with all applicable procedures. The Village and DIG agree to cooperate with one another in the spirit of this Agreement toward the goal of making the Project successful and to seek to find solutions to that end within the limits of the law.

[5] Section III.A.7. states in part:

DIG and the Village shall jointly establish a committee of Village residents that will be responsible for creating design criteria for Village Public Improvements that will be constructed outside of the Property. . . . Such Village Public Improvements shall include railings adjacent to the Village's public beach, lighting, sidewalks and plantings that are aesthetically consistent with and linked to the design of the Project Public Improvements. . . .

requiring the village to construct on Elkhart Beach a restroom facility with a design acceptable to DIG; and (6) section IV.A.8. unlawfully delegated the village's control over its funds by authorizing a citizens committee to expend public funds of up to $250,000 on village improvements.

The trial court determined that section IV.B. was invalid because the village could not contractually relinquish its authority to rezone the property in the future. The court also held that section IV.A.8. was invalid because the village improperly delegated management and control of its finances to a citizens committee. However, the court severed those two provisions from the agreement and entered a judgment and order holding the remainder of the agreement valid. Save appeals.

On appeal, Save does not challenge the village's authority to enter into a development agreement with private parties. Rather, it argues that the specific provisions it identified as being unlawful invalidate the entire agreement. Since neither DIG nor the village contests the trial court's severance of two of the provisions, we must decide whether the remaining four contested provisions are valid and whether the trial court properly severed the invalid provisions from the agreement. We conclude that the four contested provisions and the agreement as a whole are valid.

When reviewing a trial court's grant of summary judgment, we must apply the same methodology as the trial court without deference to its conclusions. *Limjoco v. Schenck* 169 Wis. 2d 703, 709, 486 N.W.2d 567, 569 (Ct. App. 1992). Since the parties agree that there are no genuine issues of material fact, summary judgment must be entered if the pleadings and affidavits filed in

this case show that the moving party is entitled to judgment as a matter of law. *Id.*

Save's primary argument is that the agreement between DIG and the village to cooperate and extend good faith in attempting to make the agreement successful renders the agreement illegal. It argues that the "promise of success *pervades* the entire Agreement" and that "the Village has put the cart before the horse." (Emphasis in original).

We agree with the trial court that cooperative agreements between developers and municipalities fall within the grant of power conferred by the legislature. *See generally* sec. 61.34, Stats.; WIS. CONST. art. XI, § 3. The terms of the agreements, when read in context, provide nothing more than an expression of the implied promise of good faith which infuses every contract. *See* Wis J I—Civil 3044 ("Every contract implies good faith and fair dealing between the parties and a duty of cooperation on the part of both parties.").

Save asserts that "Wisconsin law requires that the police power decisions be made before the Village promises to cooperate toward making a project successful." Save points specifically to section IV.C. of the agreement to argue that the village's "promise to cooperate" has, in essence, approved the entire project before making important police power decisions. We disagree.

First, Save cites no authority for its assertion that Wisconsin law requires police power decisions to be made prior to a promise to cooperate made by a municipality.[6] Further, while the language of section IV.C.

---

[6] We are unpersuaded that the lone case cited by Save, *City of Louisville v. Fiscal Court*, 623 S.W.2d 219 (Ky. 1981), pro-

indicates that the village will assist DIG in processing applications as expeditiously as possible, it also explicitly states that "none of such applications can be awarded or granted except pursuant to and in accordance with all applicable procedures" and that the parties agree to cooperate to make the project successful "within the limits of the law." We find no language in the agreement that guarantees the success of the project or allows the parties to circumvent the law in order to achieve such success. Accordingly, we conclude that such an agreement is valid and does not constitute an illegal delegation of the village's police powers.

Next, Save argues that the village's promise contained in section IV.A.1. of the agreement to close a street in order to create a pedestrian walkway is an unlawful delegation of police powers and contrary to sec. 66.296, Stats. Save contends that sec. 66.298, Stats., which allows a municipality to designate any street as a pedestrian mall and limit vehicular traffic, does not apply because the walkway is actually being designed and controlled by DIG and not the village.[7] Instead, Save argues that sec. 66.296, which governs the discontinuance of a street, applies in this instance and that the village failed to follow its requirements.

We conclude that the development agreement clearly contemplates the creation of a public pedestrian mall pursuant to sec. 66.298, Stats., and not merely the

---

vides any authority or insight into Wisconsin law. Therefore, we decline to further address it.

[7] Save also argues that since the village does not have exclusive jurisdiction over the street, sec. 66.298, Stats., is not applicable. However, as DIG and the village point out, sec. IV.A.1. is contingent upon the village first obtaining jurisdiction over the street, which it has subsequently done.

discontinuance of a street. We agree with the trial court that nothing in the law proscribes incorporation of a public pedestrian mall into a public-private development project. Accordingly, the agreement to create a pedestrian mall as part of a development agreement does not contravene state law.

Save next argues that the village improperly delegated its police powers and legislative functions in two sections: (1) section III.A.7., which permits a citizens committee and DIG to create design criteria for public improvements; and (2) section IV.A.5.(b), which requires the public restroom facility on the beach to have a design acceptable to DIG. We conclude that neither section is invalid.

It is well established that a municipality may contract away its right to exercise proprietary functions but may not contract away governmental functions without express statutory authorization. *Wausau Joint Venture v. Redevelopment Auth.*, 118 Wis. 2d 50, 59, 347 N.W.2d 604, 608 (Ct. App. 1984). A municipality acts in its governmental capacity when its primary objective is health, safety and the public good. *Id.* at 60, 347 N.W.2d at 609. A municipality acts in its proprietary capacity when engaging in business with primarily private concerns, even if some elements are governmental. *See generally State ex rel. Hammermill Paper Co. v. La Plante*, 58 Wis. 2d 32, 80-81, 205 N.W.2d 784, 811 (1973).

In *Wausau Joint Venture*, the city entered into a contract with a private developer regarding the construction and operation of a city-owned parking structure connected to a shopping mall. *Wausau Joint Venture*, 118 Wis. 2d at 59, 347 N.W.2d at 608-09. The court held that the city's primary objective in providing

and operating the parking structure was for the private convenience of shoppers and the private gain of the mall developers. *Id.* at 60, 347 N.W.2d at 609. Therefore, the court ruled that the city was acting in its proprietary capacity when entering into the contract. *Id.* at 61, 347 N.W.2d at 609.

The two provisions complained of by Save involve the design of a restroom and the establishment of a citizens committee to set design criteria for public improvements. We agree with the trial court that both provisions implicate a proprietary function which can properly be delegated to a nongovernmental entity. Although the design of a restroom must comply with applicable health codes, aesthetic features do not raise any issues relating to governmental functions. Like the parking structure in *Wausau Joint Venture*, the restroom in this case is merely incidental to a private development project.

Likewise, the design criteria for public improvements are intended to provide an aesthetically consistent architectural design with the private project. This is similar to the provision upheld in *Wausau Joint Venture* which required the parking structure to be "architecturally harmonious" with the adjacent department store. *Id.* at 60, 347 N.W.2d at 609. Further, we agree with the trial court that while the agreement establishes the citizens committee to set up design criteria, the village retains final authority to approve the design of public improvements.

Finally, Save argues that the entire agreement should be declared invalid rather than severing any invalid provisions. Save argues that the promise of suc-

cess is the "essence of the bargain" and "affects all provisions." We disagree.

The interpretation and construction of a contract are questions of law that we review without deference to the trial court. *Bank of Barron v. Gieseke*, 169 Wis. 2d 437, 454-55, 485 N.W.2d 426, 432 (Ct. App. 1992). When interpreting a contract, we must ascertain the parties' intentions as expressed by the contractual language. *Id.* at 455, 485 N.W.2d at 432. Unambiguous contractual language must be enforced as it is written. *State v. Windom*, 169 Wis. 2d 341, 348, 485 N.W.2d 832, 835 (Ct. App. 1992).

Section V.C. of the agreement states in part:

> Any provision of this Agreement which shall prove to be invalid, void or illegal shall in no way affect, impair or invalidate any other provision hereof and the remaining provisions hereof shall nevertheless remain in full force and effect.

This severability clause is unambiguous and clearly indicates that the parties intended that the balance of the agreement should stand regardless of the invalidity of any one of its provisions. Therefore, we conclude that the trial court properly severed the invalid provisions, and we affirm the judgment and order upholding the validity of the remainder of the agreement.

*By the Court.*—Judgment and order affirmed.