Town of Brockway, Plaintiff-Appellant,†

v.

City of Black River Falls and
McFour Ventures, LLC,
Defendants-Respondents.

Court of Appeals

*No. 2004AP2916. Submitted on briefs April 20, 2005.
—Decided June 30, 2005.*

2005 WI App 174

(Also reported in 702 N.W.2d 418.)

† Petition to review denied 10-14-05.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Michael L. Stoker, Johns, Flaherty & Collins, S.C.*, La Crosse.

On behalf of the defendant-respondent McFour Ventures, LLC, the cause was submitted on the brief of *John L. Maier, Jr., Sweet & Maier, S.C.*, Elkhorn.

On behalf of the defendant-respondent Black River Falls, the cause was submitted on the brief of *Thomas A. Gilligan Jr., Murnane, Conlin, White and Brandt, P.A.*, St. Paul, MN.

Before Dykman, Vergeront and Lundsten, JJ.

¶ 1. VERGERONT, J. The Town of Brockway appeals the circuit court's order granting summary judgment and dismissing its claim that the annexation of certain of the Town's territory by the City of Black River Falls was invalid. We conclude the complaint was sufficient to allow the Town to argue that an agreement between the City and the property owner was an abuse of the City's discretion and therefore a violation of the rule of reason. However, we also conclude, based on the undisputed facts, that the City did not in the agreement surrender its governmental powers and did not exert economic pressure of the type prohibited by *Town of Fond du Lac v. City of Fond du Lac*, 22 Wis. 2d 533, 126 N.W.2d 201 (1964). Accordingly, we conclude the agreement did not constitute an abuse of the City's discretion and the annexation did not violate the rule of reason. We therefore affirm.

## FACTUAL BACKGROUND

¶ 2. On May 7, 2002, the City approved two ordinances annexing Town property owned by McFour Ventures, LLC.[1] The Town filed this lawsuit challenging the annexation on a number of grounds, but the only one relevant to this appeal is the claim that the City violated the rule of reason.[2] McFour Ventures intervened as a defendant by stipulation of the Town and the City.

---

[1] The property annexed consisted of more than one parcel and McFour Ventures elected to file two separate petitions. The fact that there were two petitions and two ordinances, instead of one of each, is not significant on this appeal.

[2] In addition to this annexation action, the Town, Brockway Sanitary District No. 1, and four residents initiated an action

¶ 3. All parties moved for summary judgment. The following facts are undisputed. McFour Ventures is a family-owned Wisconsin limited liability company in the business of leasing and selling land. The annexed property, consisting of approximately 395 acres, is located at the intersection of State Highway 54 and Interstate 94. Prior to its annexation, the property was contiguous to the corporate limits of the City and was zoned agricultural.

¶ 4. Before it sought annexation of its property by the City, McFour Ventures planned an industrial and commercial development for the property. McFour Ventures believed that in order for this development to occur, the revenue that would be available in a tax incremental financing (TIF) district[3] was necessary to finance the required public infrastructure. McFour Ventures' counsel was of the opinion that the Town, as a matter of law, could not create a TIF district but that the City could. McFour Ventures therefore decided that annexation by the City was necessary to achieve the planned use of the property. Beginning in December 2001, McFour Ventures and its counsel began meeting

---

against the City challenging the tax incremental financing (TIF) district that we refer to in this opinion.

[3] WISCONSIN STAT. § 66.1105 authorizes Wisconsin cities to establish tax incremental financing districts to assist them in financing public improvement projects in areas that are blighted, needing rehabilitation or suitable for industrial development. *Town of Baraboo v. Village of West Baraboo*, 2005 WI App 96, ¶ 32, 283 Wis. 2d 479, 699 N.W.2d 610. This goal is accomplished by permitting the city to divert property tax revenues generated as a result of increased property values in a designated TIF district to pay for municipal improvements or development assistance provided within the district. *Id.*

All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

with city officials—the mayor, the city clerk, and the city attorney—to discuss annexation and the possibility of the creation of a TIF district.

¶ 5. During the course of these discussions, McFour Ventures and city officials negotiated a draft of a document titled "Pre-annexation and Development Agreement" (the agreement). McFour Ventures' counsel prepared the initial draft and there were revisions to it based on discussions between McFour Ventures and the city officials. The agreement contained the following provision:

> The Property Owner has now filed a Petition for direct Annexation to join the Property to the City. The City Plan Commission has favorably reviewed the proposed annexation of the Property, and has recommended the annexation. The Property owner has requested that the City assign rural Development District Zoning to the Property. It is understood that portions of the Property will have to be re-zoned to comply with the TIF laws of the State of Wisconsin.

In other provisions, the City "represent[ed] that it intend[ed] to pursue the creation of a TIF District, which [would] include [certain of the property]"; adopt a TIF plan in substantially the same form as attached; and "install public streets, water lines, storm and sanitary sewers and other public improvements necessary to serve the TIF Property in accordance with the TIF Plan . . . ." McFour Ventures "agree[d] to have the Property annexed to the City, provided the City zone[d] all of the Property Rural Development District." The City "agree[d] to furnish street and utility services via the TIF Plan as set forth therein," and "to annex the Property in accordance with the terms and conditions hereof." The agreement described the public and private improvements in some detail, the allocation of respon-

sibility for them, and the method of special assessments that might be necessary for financing the public improvements. Finally, the City agreed to "actively support and assist the Property Owner with respect to the Owner's endeavors to obtain required permits and approvals from all governmental or quasi-governmental agencies or boards, whether federal, state or local, with jurisdiction over any aspect or part of a development of a TIF Property . . . ."

¶ 6. With a cover letter dated April 15, 2002, McFour Ventures sent the petitions for direct annexation to the city clerk along with the final draft of the agreement. The petitions were signed by all the electors residing in the territory and the owners of all the real property in the territory. With respect to the enclosed agreement, the letter stated:

> This agreement is not signed by the parties since it requires you to take it to the Plan Commission, the Finance Committee and the Common Council for their impute [sic] and approval. As you know, the main incentive for my clients requesting you to annex this property is the creation of the Tax Increment Finance ("TIF") District. This agreement sets forth the terms and conditions of the TIF and the annexation of my client's property to the City of Black River Falls.
>
> I indicated that my clients would sign the proposed agreement in hopes that the Commission, the Committee and the Common Council will accept the fruits of our collective efforts.
>
> . . . .
>
> I request that these Petitions be heard at the next available City Planning Commission meeting, and then scheduled at the following regular meeting or meetings of the Common Council for the City of Black River

Falls. I also request that the matter of the TIF be introduced at that . . . meeting as well.

¶ 7. A public hearing was held on May 1, 2002, on the annexation petitions; the hearing also solicited public opinion on amending the City's zoning ordinance to add an "I-1 (Light Industrial District)." At the common council meeting on May 7, 2002, the common council first took up the two annexation ordinances, which had a favorable recommendation from the plan commission, and voted to pass both ordinances. The common council then took up the amendment to the zoning ordinance, also recommended by the plan commission, and passed the amendment. This was followed by a motion to authorize the mayor and the city clerk to execute the agreement with McFour Ventures, and the motion passed.[4] On July 2, 2002, the common council approved a TIF district, including a portion of the annexed property.

¶ 8. In support of its motion for summary judgment, the Town argued that, based on the undisputed facts, the agreement was an unlawful surrender of the City's governmental powers and, in addition, was the type of economic pressure prohibited under *Town of Fond du Lac*, 22 Wis. 2d 533. Therefore, according to the Town, the City violated the rule of reason by abusing its discretion and the annexation was invalid. The City and McFour Ventures responded that the

_____

[4] The minutes of the meeting describe the motion to authorize the execution of the agreement and the second, but there is no "motion carried," as there is for other motions introduced at the meeting. However, all parties, including the Town, state in their briefs that the common council approved the agreement at the meeting. Therefore, we consider it undisputed that the motion carried.

annexation was valid because there was compliance with all statutory requirements and with the rule of reason, and in all other respects the procedure was proper and lawful.

¶ 9. The circuit court concluded that the agreement was not an unlawful surrender of the City's governmental powers because it did not become binding on the City until it was approved by the common council after the council adopted the annexation ordinances, and there was not otherwise an abuse of discretion by the City. Accordingly, the court granted the motion of the City and McFour Ventures for summary judgment and dismissed the complaint.

## ANALYSIS

¶ 10. On appeal, the Town renews its argument that the annexation violated the rule of reason because the agreement was an abuse of the City's discretion in that it was an unlawful surrender of the City's governmental powers and also the type of economic pressure prohibited by *Town of Fond du Lac*.

¶ 11. In reviewing the grant or denial of a summary judgment, we employ the same methodology as the circuit court and our review is de novo. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). Because in this case the material facts are not disputed, the question we address is which party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2).

¶ 12. Before discussing the parties' positions on the merits, we consider the City's argument that the Town is precluded from arguing that the unlawfulness

or impropriety of the agreement invalidated the annexation because this issue was not raised in the complaint. Whether a complaint is sufficient to entitle a party to relief on a particular claim presents a question of law, which we review de novo. *Wausau Tile, Inc. v. County Concrete Corp.*, 226 Wis. 2d 235, 245, 593 N.W.2d 445 (1999).

### I. Sufficiency of Complaint

¶ 13. In the circuit court, the City contended in its responsive brief that the Town was precluded from arguing that the agreement invalidated the annexation because this issue was not raised in the complaint.[5] The Town replied that it had not learned of the agreement until discovery and that the allegations in the complaint concerning violation of the rule of reason were broad enough to encompass its arguments on the agreement. The circuit court did not address the sufficiency of the complaint on this point, but instead decided the merits of the Town's arguments concerning the agreement.

■
¶ 14. Wisconsin is a notice-pleading state, *see* WIS. STAT. § 802.01(1), but a complaint must nonetheless contain a statement of the general factual circumstances in support of the claim presented. *Town of Campbell v. City of La Crosse*, 2003 WI App 247, ¶ 14, 268 Wis. 2d 253, 673 N.W.2d 696 (citations omitted). In the context of a challenge to an annexation, a com-

---

[5] The City had argued in its first brief in support of its motion for summary judgment that the agreement was evidence of one of the "rule of reason" factors—a present or demonstrable future need for the annexed property.

plaint must allege some facts that, if true, entitle the pleader to a ruling that the annexation is invalid. *Id*.

¶ 15. Although the complaint does not specifically refer to the agreement, it does contain the following allegation:

> [The annexation] violate the judicially created 'Rule of Reason' insofar as, among other things, the boundaries of said annexations are arbitrary and capricious, a result of gerrymandering; the territory of the annexations is better served by the Town, neither the City nor the Petitioners have a need for annexation, and the annexation[] [is] *inequitable* and *unjust*.

(Emphasis added.) We conclude this allegation is sufficient to encompass the argument that the unlawfulness or impropriety of the agreement makes the annexation inequitable or unjust, thus constituting a violation of the rule of reason.[6]

¶ 16. We do not agree with the City that our decision in *Town of Campbell* requires a specific reference in the complaint to the agreement. Our ruling in that case did not require this degree of factual specificity. Rather, we held there that the allegation that the annexation was "invalid as a matter of law" was not adequate notice of a claim that the wrong procedure

---

[6] We recognize that the Town presents its arguments under a number of separate headings, not all of them expressly tied to the rule of reason. However, the essence of all the arguments is that the unlawfulness or impropriety of the agreement is an abuse of the City's discretion, which violates the rule of reason. We therefore organize our discussion in this way, rather than by the headings in the Town's main brief.

was followed because the annexation included property of non-consenting owners.[7] *Id.*, ¶ 14.

## II. Rule of Reason

### A. Applicable Law

¶ 17. In WIS. STAT. ch. 66, the legislature has conferred upon cities and villages broad powers to annex unincorporated territory. *Town of Pleasant Prairie v. City of Kenosha*, 75 Wis. 2d 322, 326, 249 N.W.2d 581 (1977). Judicial review of an annexation is limited to whether the statutory procedures for annexation have been followed and whether the annexation complies with the rule of reason. *Id.* On this appeal, no statutory procedures are at issue.

¶ 18. The rule of reason is a judicially created doctrine that assists courts in determining whether a municipality had abused its powers of annexation. *Town*

---

[7] We also observe that, even if the complaint were not adequate notice, as the City asserts, the circuit court had the discretion to permit an amendment to the complaint after six months from the filing of the summons and complaint and leave is to be freely granted in the interests of justice. WIS. STAT. § 802.09(1). The record here contains ample grounds to support permission for an amendment to include an allegation that the annexation was invalid because of the invalidity of the agreement: there is no dispute that the City knew of the agreement; there was extensive discovery concerning it; the various drafts were included in the documents that all parties agreed to submit to the circuit court along with a stipulation of facts; the City argued in its first brief that the agreement supported the rule of reason, *see* footnote 5; and the City had the opportunity to respond to the Town's arguments concerning the agreement and did so.

*of Pleasant Prairie*, 75 Wis. 2d at 327. Under the rule of reason: (1) exclusions and irregularities in boundary lines must not be the result of arbitrariness; (2) there must be some present or demonstrable future need for the annexation; and (3) there must be no other factors that constitute an abuse of discretion on the part of the municipality. *Town of Menasha v. City of Menasha*, 170 Wis. 2d 181, 189, 488 N.W.2d 104 (Ct. App. 1992). Only the third part of the rule of reason is implicated on this appeal.

¶ 19. Annexation ordinances enjoy a presumption of validity and the challenger has the burden of showing that the annexation violates the rule of reason. *Town of Pleasant Prairie*, 75 Wis. 2d at 327.

> The rule of reason does not authorize a court to inquire into the wisdom of the annexation before it or to determine whether the annexation is in the best interest of the parties to the proceeding or of the public. These matters are inherently legislative and not judicial in character.

*Id.*

¶ 20. Where, as here, the relevant facts are undisputed, the question whether the facts meet the legal requirements of the rule of reason is a question of law, which this court reviews de novo, while bearing in mind the deferential standard this court applies to the City's decision to annex. *Town of Campbell*, 268 Wis. 2d 253, ¶ 20.

B. Surrender of Governmental Powers

¶ 21. The Town argues that the agreement obligated the City to make zoning changes and create a TIF

district and thus violated the principle that municipalities may not surrender or contract away their governmental powers. *See Wausau Joint Venture v. Redevelopment Auth.*, 118 Wis. 2d 50, 59, 347 N.W.2d 604 (1983) (affirming and applying the proposition that a municipality may not surrender or contract away government functions or powers without statutory authorization, although it may by contract curtail its right to exercise proprietary or business functions).[8]

¶ 22. A key component of the Town's argument on the unlawfulness of the agreement is that the city officials who negotiated the agreement bound the City to the agreement before the common council approved it. We address this issue first, before returning to the Town's argument that the agreement unlawfully contracted away the City's governmental powers.

¶ 23. The Town concedes that the agreement was not approved by the common council until its May 7 meeting and that this occurred after the common council voted to approve the annexation ordinances. However, the Town considers this a "well choreographed procession of formalities [that] does not cure the underlying abuse of authority evidenced by the various versions of the Pre-annexation Agreement." According to the Town, it was a foregone conclusion that the common council would vote to approve the agreement because it had been negotiated by powerful city officials, and the officials were somehow binding the City by their negotiations.

---

[8] A municipality acts in its governmental capacity when its primary objective is health, safety, and the public good. It acts in its proprietary capacity when engaged in business with primarily private concerns, even if some elements are governmental. *Save Elkhart Lake, Inc. v. Village of Elkhart Lake*, 181 Wis. 2d 778, 789, 512 N.W.2d 202 (Ct. App. 1993).

¶ 24. We reject the Town's position that the common council, and thus the City, was bound by the agreement before the common council voted to authorize the mayor and clerk to execute it. The Town provides no case law or statutory law to support the proposition that a mayor, city clerk, or city attorney has the authority to bind a city to a contract. The general rule of municipal law is that only a duly authorized officer, governing body, or board can act on behalf of a city, and a valid contract with the municipality cannot be created otherwise. 10 McQuillan, Municipal Corporations § 29.15 at 307 (3d ed. 1999). The powers and duties of city mayors, clerks, and attorneys are prescribed by statute and do not include this authority. *See* Wis. Stat. § 62.09(8), (11), and (12). On the other hand, the common council has a broad grant of authority for

> the management and control of the city property, finances, highways, navigable waters, and the public service, and . . . power to act for the government and good order of the city, for its commercial benefit, and for the health, safety, and welfare of the public, and may carry out is powers by license, regulation . . . and other necessary or convenient means.

Wis. Stat. § 62.11(5). "A city attorney cannot make a valid contract on behalf of the city unless he has prior authority to do so. Only the municipal corporation has that authority or the authority to delegate that authority." *Kocinski v. Home Ins. Co.*, 154 Wis. 2d 56, 69, 452 N.W.2d 360 (1990). The Town points to no evidence here that shows that any of the city officials who negotiated the agreement had the authority to bind the City without common council approval.

¶ 25. The Town refers to cases holding that a written agreement need not be signed by both parties to be effective, *Consolidated Papers, Inc. v. Dorr-Oliver, Inc.*, 153 Wis. 2d 589, 451 N.W.2d 456 (Ct. App. 1989), and that parties may be bound by the terms of a contract, even if they do not sign it, when their intention to do so is otherwise indicated. *See, e.g., Albright v. Stegeman Motor Car Co.*, 168 Wis. 557, 170 N.W. 951 (1919). However, these cases do not involve contracts with municipalities. If a city official does not have the authority to bind the city, subjective intent is irrelevant. *See Kocinski*, 154 Wis. 2d at 69. Moreover, in this case there is no evidence that the city officials intended to bind the City without common council approval or suggested that they had the authority to do so. Indeed, it is undisputed that McFour Ventures understood that the common council had to approve the agreement before it was binding on the City. It may be that the city officials negotiating the agreement were confident the common council would approve it and communicated this to McFour Ventures, and undoubtedly McFour Ventures relied on the likelihood of that approval in petitioning for annexation. But those expectations did not make the agreement binding before the common council approved it.

¶ 26. Having concluded that the agreement was not binding on the City until the common council voted to authorize the mayor and clerk to sign it, we return to the Town's argument that the agreement was unlawful because it contracted away the City's governmental powers. The City responds that the lawfulness of the agreement is irrelevant to the validity of the annexation because the agreement did not become binding on the City until the common council authorized it, and that

725

occurred after the common council passed the annexation ordinances. We will assume without deciding that the lawfulness of the agreement is relevant to the validity of the annexation and address the merits of the Town's argument.

¶ 27. The rationale for the principle that a municipality may not contract away its governmental powers is that a municipality is " 'wholly a creature of legislatively delegated power, [and therefore] cannot by ordinance or contract bargain away that portion of the state's sovereignty which has been conferred upon it.' " *State ex rel Hammermill Paper Co. v. La Plante*, 58 Wis. 2d 32, 80, 205 N.W.2d 784 (1973) (citing *Adamczyk v. Caledonia*, 52 Wis. 2d 270, 275, 190 N.W.2d 137 (1971)). One aspect of this principle is that a municipality may not make contracts that will control them in the performance of their legislative functions in the future, and that includes zoning. 10 McQuillan, Municipal Corporations § 29.07 (3d ed. 1999).

¶ 28. With respect to zoning, the agreement here does not state that the City will amend the zoning ordinance. In section 1.03 of the agreement, the City acknowledges that McFour Ventures has requested Rural Development District Zoning and that this is necessary to create a TIF district. The obvious implication, from the standpoint of the time during which the agreement was being negotiated, is that the zoning process had been or would be set in motion; but the terms of the agreement do not obligate the common council to approve McFour Venture's zoning request. As already noted, the common council did approve the zoning ordinance before it authorized the agreement. The agreement also states that McFour Ventures "agrees to have the Property annexed to the City,

provided the City zones all of the Property Rural Development District . . . ." This does not obligate the City to zone the property in that way but instead suggests that McFour Ventures will not proceed with the annexation unless the City first does so. In any case, McFour Ventures *did* proceed with the annexation petitions even though the common council did not first pass the zoning ordinance.

¶ 29. With respect to the creation of a TIF district, the agreement affirms the City's intent to pursue the creation of a TIF district. In essence, when the City voted to approve this agreement, it was exercising its governmental power to decide that it would pursue the creation of a TIF district and would provide certain public improvements on certain conditions to the property in the district. Under Wis. Stat. § 66.1105(3)(a) and (b), the City has the power to create TIF districts, define its boundaries, cause project plans to be prepared and approved, and implement the plans; under para. (e) the City has the power to enter into agreements "determined by the local legislative body to be necessary or convenient to implement the provisions and effectuate the purposes of project plans." As we have explained above, the City was not bound until the common council voted to approve the agreement. Thus, no prior act of a city official had restricted or limited the governmental power of the City by obligating the common council to approve the pursuit of the creation of a TIF district.

¶ 30. This conclusion is supported by *Town of Pleasant Prairie*, 75 Wis. 2d 322. There the property owners' motive for annexation by the city was development of their property as industrial property; neither the necessary zoning nor municipal services was then available in the town. *Id.* at 328. The property owners met with the city officials several times to discuss

727

annexation. *Id.* A day after they filed the annexation petition, they petitioned the common council to have most of the land rezoned for heavy industrial use and asked that the annexation and zoning petitions be considered together because the purpose of both was to permit the development of the property for industrial purposes. *Id.* at 329. At the same common council meeting, the common council adopted the annexation ordinance and voted to refer the zoning matter to the city plan commission for consideration. The court considered and rejected the town's argument that the city promised rezoning as a bribe to induce annexation and thereby delegated its zoning power to the property owners, stating:

> It may be that the City Planner informed the Ganglers that he personally felt industrial zoning would be appropriate for the annexed area or that he thought the Common Council would probably approve such zoning. However, there is no evidence to show that anyone acting on behalf of the City promised any type of rezoning or otherwise purported to commit the City in this regard. Moreover, as we have noted, the Common Council has already partially refused Mr. Gangler's rezoning petition, which requested that the property be rezoned for heavy industrial use. Speculative characterizations such as the Town has advanced cannot serve to overcome the presumed validity of the annexation ordinance here.

*Id.* at 332.

¶ 31. Although the court in *Town of Pleasant Prairie* did not go into depth on the issue of delegation—or surrender—of the city's zoning power, the case does instruct that a delegation or surrender does not occur when the common council remains free to approve or

reject the requested rezoning. That is the case here. *Town of Pleasant Prairie* also firmly cautions against assumptions that the city officials acted improperly to bind the City when the evidence does not show that occurred.

¶ 32. The Town cites cases from other jurisdictions to support its position, most prominently *City of Louisville v. Fiscal Court of Jefferson County*, 623 S.W.2d 219 (1981).[9] The Town's discussion of this case is based on the Town's premise, which we have already rejected, that the agreement was binding on the City before the common council voted to approve it. None-

---

[9] The Town cites several other cases from other jurisdictions that apply the principle that a municipality may not contract away its governmental powers, but the facts in all the cases are significantly different from those in this case. We therefore list the holdings without further discussion. *Brownsboro Road Area Defense, Inc. v. McClure*, No. 2002CA2559–MR, 2004 WL 1909337, at *4 (Ky. Ct. App. Aug. 27, 2004) (settlement agreement lawful because it did not obligate the municipality to approve the application for a zoning change); *Vermont Dept. of Pub. Serv. v. Massachusetts Municipal Wholesale Elec. Co.*, 558 A.2d 215, 222–23 (Vt. 1988) (contract void because it impermissibly delegated to a state agency the municipality's spending power and restricted the municipality's ability to incur debt); and *Mount Juneau Enterprises, Inc. v. City & Burrough of Juneau*, 923 P.2d 768, 776 (Alaska 1996) (provision in agreement that in the future municipality would treat property owner's claim as valuable and transfer land in exchange for an agreement to abandon land is likely unenforceable because it requires assembly in advance to agree to future legislative action); *Kaiser Development Co. v. City & County of Honolulu*, 649 F. Supp. 926, 937–38 (D. Ha. 1986) (property owners' claim that they had a vested right to assurances they could develop their property had no merit for a number of reasons, including that municipalities may not bind themselves to future zoning or other legislative decisions).

theless, we consider the case to determine whether it provides support for the proposition that the agreement approved by the common council constituted an unlawful surrender of governmental authority. We conclude it does not.

¶ 33. In *City of Louisville*, the court invalidated a settlement agreement between a municipality and the property owners in an area that the municipality sought to annex. The agreement provided that the property would be annexed and the municipality would place it in a special taxing and service district with a reduced ad valorem tax for a number of years. The court held that the provision setting tax rates for twenty years was void because the municipality could not by contract limit its future legislative power. *Id.* at 224. The court also held void a provision obligating the municipality to "cooperate fully and in good faith" with the property owners in an application for "reasonable zoning changes, building and other permits . . . and any and all other changes for which municipal, environmental or any other governmental approval is requested," and another provision that obligated the municipality not to "take any action of any nature whatsoever that will diminish or adversely affect the agricultural or forestry use of the part of the area presently so used." *Id.* at 225. The court concluded that these two provisions might create conflicts of interest and would also obligate the municipality to take particular legislative action in the future. *Id.* It is the ruling on these last two cooperation provisions on which the Town relies.

¶ 34. As the City points out, in *Save Elkhart Lake, Inc. v. Village of Elkhart Lake*, 181 Wis. 2d 778, 788 n. 6, 512 N.W.2d 202 (Ct. App. 1993), we declined to consider *City of Louisville* in support of an argument that the cooperation provisions in that agreement be-

tween a village and a developer were void as a delegation of the village's police powers. The two challenged cooperation provisions in *Elkhart Lake* stated that (1) the parties agreed to "work cooperatively to accomplish the object of an economically viable Project that will promote the construction of significant public improvements in the Village and reduce the property tax burden of Village residents," and (2) the Village would assist the developer in "processing as expeditiously as possible all applications for permits, approvals, variance, licenses, certificates, rezonings, inspections, and consents that may be necessary or desirable to enable [the developer] to commence and carry out the development of the Project within the time frames set forth herein."[10] *Id.* at 783, 786 n.4. The plaintiff in *Elkhart Lake* argued that Wisconsin law requires that "the police power decisions"—meaning the decisions involving road relocation, rezoning, and the creation of a TIF district—had to be made before the municipality promised to cooperate toward making a project successful and that the village's "promise to cooperate" in essence "approved the entire project before making important police power decisions." *Id.* at 784 n.1, 787.

¶ 35. We rejected this argument. We observed in *Elkhart Lake* that the plaintiff had cited no Wisconsin authority for this position, stating in a footnote: "We

[10] The circuit court in *Elkhart Lake* had declared two provisions invalid, and the village did not appeal those rulings. 181 Wis. 2d at 787. One provision stated that any future ordinance passed by the village to limit or reduce lake access would not apply to this property. *Id.* The circuit court held that to be invalid because it contractually surrendered the village's right to rezone the property in the future. *Id.* The second provision, the circuit court held, improperly delegated management and control of the village's finances to a citizen's committee. *Id.*

are unpersuaded that the lone case cited by [the plaintiff], *City of Louisville v. Fiscal Court of Jefferson County*, 623 S.W.2d 219 (Ky. 1981), provides any authority or insight into Wisconsin law. Therefore, we decline to further address it." *Elkhart Lake*, 181 Wis. 2d 778, 788 n.6. We also stated that cooperative agreements between municipalities and developers were within the grant of powers conferred on the Village by Wis. Stat. § 61.34,[11] and there were provisions in the agreement indicating that everything was to be done in accordance with all applicable procedures and within the limits of the law. Because there was nothing in the agreement that "guarantees the success of the project or allows the parties to circumvent the law," we concluded that the cooperation provisions did not constitute an invalid delegation of the municipality's police powers. *Id.* at 788.

¶ 36. Under *Elkart Lake* the City here may lawfully agree to cooperate with McFour Ventures in the effort to create a TIF district, as long as it is clear from the agreement that all applicable laws and procedures are to be followed. To the extent that *City of Louisville* holds otherwise, it is inconsistent with the law in Wisconsin. There is nothing in the agreement between the City and McFour Ventures that suggests the applicable laws and procedures are not to be followed. Indeed, the agreement is plainly drafted with the statutory requirements for creating TIF districts in mind. We also observe that the specific cooperation provision in this agreement—that the City will "actively support and assist" McFour Ventures in its efforts "to obtain

---

[11] Wisconsin Stat. § 61.34(1) gives village boards powers that are essentially the same as those given cities under Wis. Stat. § 62.11(5).

required permits and approvals from all governmental and quasi-governmental agencies or boards" for the development of the TIF property—appears to apply to permits and approvals from other governmental units. However, even if the provision is intended to encompass permits and approvals from the City, we are satisfied that, under *Elkart Lake*, this provision does not constitute an unlawful delegation of the City's governmental powers.

¶ 37. We conclude the agreement did not surrender or contract away the City's governmental powers.[12]

C. Impermissible Economic Pressure

¶ 38. The Town also argues that the agreement was the type of "quid pro quo" held invalid in *Town of Fond du Lac*, 22 Wis. 2d 533.[13] In that case, the municipality was one of the two property-owning petitioners for annexation. *Id.* at 536. The municipality

---

[12] Because we conclude that the agreement was not an unlawful surrender of the City's governmental powers, we do not address the parties' arguments on the severability clause in the agreement.

[13] We recognize that in *Town of Fond du Lac v. City of Fond du Lac*, 22 Wis. 2d 533, 538–39, 541, 126 N.W.2d 201 (1964), the court addressed the impermissible economic pressure issue separately from the rule of reason. It is not clear to us from *Town of Pleasant Prairie v. City of Kenosha*, 75 Wis. 2d 322, 330–31, 249 N.W.2d 581 (1977), whether the court there considered this issue to be part of the rule of reason or a separate ground for invalidating an annexation. In *Town of Campbell v. City of La Crosse*, 2003 WI App 247, ¶¶ 36, 40, 268 Wis. 2d 253, 673 N.W.2d 696, we considered the issue in our analysis of the third component of the rule of reason. Whether the issue of impermissible economic pressure under *Town of Fond du Lac* is

obtained in writing the agreement of two electors to sign the petition in exchange for permitting them to remain rent free for one year in the home the municipality had just purchased from them. *Id.* The municipality notified two other electors, its tenants, that they would be evicted from their residence if they did not sign the petition. *Id.* at 536–37. The court analogized an annexation proceeding to voting because both involved a political right that must be the individual act of the elector. *Id.* at 540. While recognizing that annexation proceedings legitimately involve political pressures of conflicting interests, the court stated that "the use of economic pressure by the defendant-city interested in the outcome of the annexation to obtain favorable signatures of the necessary electors in this case is a shocking disregard of the political process of government." *Id.* at 539–40. The court viewed the City's conduct as the equivalent of buying votes and declared the annexation void on that basis. *Id.* at 540.

¶ 39. In analyzing what was wrong with the municipality's conduct, the court in *Town of Fond du Lac* stated:

> No property owner, city or individual, possesses any right to induce by contract or threat an elector to vote a particular way or to sign an annexation petition because of special economic consideration *unrelated to the political issue involved.* This is not to say one cannot persuade an elector to vote in favor of his general interest in the outcome of a political issue. In the former case the *extraneous outside factor defiles the integrity of the political act* and destroys its validity.

*Id.* (emphasis added).

---

encompassed in the third part of the rule of reason or is a separate ground for invalidating an annexation does not affect the substance of the analysis.

¶ 40. *Town of Fond du Lac* does not support the Town's position. It is undisputed that McFour Ventures approached the City because it had decided it wanted to have its property annexed by the City. McFour Ventures had to be annexed to the City in order to have its property in a TIF district; it wanted the TIF district and therefore it wanted annexation. It is true that McFour Ventures would not have pursued annexation had the city officials not been willing to negotiate an agreement on pursuing a TIF district and to present it to the common council for approval. However, the city officials' willingness to do that is not the equivalent of what the municipality did in *Town of Fond du Lac*: use the power it had as an owner of the property on which the electors resided to coerce unwilling or undecided electors through economic pressure that was unrelated to the benefits of annexation.

¶ 41. The distinction between the impermissible economic pressure in *Town of Fond du Lac* and permissible inducements for annexation was addressed in *Town of Pleasant Prairie*, 75 Wis. 2d 322. The court there first rejected the argument that the annexation was improper because the sole purpose was to effect rezoning. The court reasoned that the underlying purpose was development of the property for industrial use, zoning was necessary for that, and the desire of property owners to develop their property was a legitimate purpose for annexation. *Id.* at 328. The court therefore concluded that a "direct annexation not otherwise in conflict with the rule of reason is not invalidated because the petitioners are motivated by a desire to obtain a change in the zoning of their land." *Id.* at 329–30. The court next rejected the argument that the city used the economic benefits of rezoning as an

improper inducement of the type prohibited by *Town of Fond du Lac*. The court stated that it was undisputed that the property owners desired annexation because of their own self-interest and that the property owners, not the city, made the decision to initiate the annexation process and seek rezoning. There was no evidence of coercion, the court said, or of the "special economic considerations of the type involved in *Town of Fond du Lac*." *Id.* at 331.

¶ 42. Like the court in *Town of Pleasant Prairie*, we conclude there is no evidence here that the municipality coerced the property owner into the annexation or imposed the type of economic pressure found impermissible in *Town of Fond du Lac*.

*By the Court.*—Order affirmed.