Town of Waukesha, Plaintiff-Respondent,

v.

164 of Waukesha Limited Partnership,
Defendant-Appellant.†

Court of Appeals

*No. 2008AP1795. Oral argument August 12, 2009.
—Decided September 16, 2009.*

2009 WI App 147

(Also reported in 774 N.W.2d 814.)

† Petition to Review denied 3/9/10.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Alan H. Marcuvitz* and *Susan M. Sager* of *Michael Best & Friedrich, LLP*, Milwaukee. There was oral argument by *Susan M. Sager*.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James W. Hammes* of *Cramer, Multhauf & Hammes, LLP*, Waukesha. There was oral argument by *James W. Hammes*.

A nonparty brief was filed by *Carol B. Nawrocki* of *Wisconsin Towns Association* of Shawano.

Before Brown, C.J., Anderson and Snyder, JJ.

¶ 1. SNYDER, J.   The 164 of Waukesha Limited Partnership (the Developer) appeals from a judgment in favor of the Town of Waukesha following cross-motions for summary judgment. The Developer contends that

the circuit court erred when it held that an annexation waiver signed by the Developer was enforceable as a matter of law and that the Developer was liable for liquidated damages of $250,000 plus costs and attorney fees under the agreement. The Developer asserts that the Town did not have the statutory authority to request the annexation waiver and that the Town's action was coercive. It alternatively argues that the contract is unenforceable because it was not approved by the town board and, further, that it was not supported by consideration. We disagree and affirm.

## BACKGROUND

¶ 2.   In 2005, the Developer contacted the Waukesha town chairman to propose commercial development of property located in the Town. At a subsequent meeting with the chairman, the Developer submitted a conceptual site plan for development of the property. It told the chairman that the city of Waukesha did not want retail at that location. The chairman explained that the Town had previously supported development of a grocery store on Town property when the city had rebuffed the developer. The Town worked with the developer and the plan was approved. Once the grocery store was under construction, but before it was open for business, the city changed its position and agreed to allow the store to operate at the site. The developer petitioned to annex the property to the city and the Town lost a substantial tax base after the annexation. The chairman explained that because of that previous experience, the Town might request that the Developer enter into an agreement waiving the right to annex the property to the city. The Developer indicated there would be no objection to such an agreement.

¶ 3. At the town plan commission meeting on October 13, 2005, the Developer submitted its conceptual plan and again indicated that it would agree to waive the right to petition for annexation to the city. The plan commission voted to recommend approval of the plan to the town board, subject to the development "meeting all the requirements for a CSM [certified survey map], Site Plan and Plan of Operation approval and any other governmental entity requirements."

¶ 4. In a letter dated August 14, 2006, the Developer sent a revised concept plan to the Town. In the cover letter, the Developer sought a meeting to discuss "any need to amend the zoning code," "potential extraterritorial rights of the City of Waukesha over the Certified Survey Map . . . and implications thereof," and zoning code setback issues. The chairman, the Town's attorney, the Developer and others met and worked through a number of issues. The Developer wanted assurance that the property could be developed according to the revised plan and could include a restaurant, and it wanted approval of a CSM that was "substantially different" from the map associated with the approved concept plan; specifically, the CSM depicted the creation of a second buildable lot on the property. The Town's land division code prohibited the construction of buildings on lots created by a land division unless several criteria were met.[1] The Developer sought a waiver of the criteria. The Developer also sought a revision to the Town's zoning code regarding sideyard setbacks.

---

[1] Before any building could be constructed on a subdivided lot, the TOWN OF WAUKESHA, WIS., LAND DIVISION ORDINANCE § 12–10–1 required a signed development agreement and financial guarantees. Construction also depended on the Town's approval of other improvements such as retention ponds and internal roadways.

¶ 5.  On October 12, 2006, the town board met and approved the amended setback requirement of the zoning ordinance; however, the board tabled the approval of the plan commission's recommendation until a memorandum of understanding was signed to address the Town's concern about future annexation of the property to the city. A document titled "Agreement to Waive or Relinquish Right to Petition or Participate in Annexation Proceedings" was signed by the Developer on October 18, 2006. Under the terms of the agreement, the Developer consented to pay $250,000 in liquidated damages in the event it filed a petition for annexation with the city of Waukesha and the property was subsequently annexed to the city.

¶ 6.  On November 9, 2006, the town board again took up the plan commission's recommendation for approval of the Developer's project. The board voted to accept the plan commission's recommendation, subject to certain conditions. An amended statement of the conditions, dated November 29, recited several actions to be completed in conjunction with the CSM approval. For example, the Town required the Developer to submit road and stormwater management plans before building permits would issue and it required the Developer to submit a letter of credit and to reimburse the Town for fees paid for technical assistance during the review process. The amended conditions of CSM approval also referred to the agreement, signed October 18, that the Developer would not petition for annexation to the city.

¶ 7.  In a letter dated December 7, 2006, Waukesha county notified the Developer that it could not recommend approval of the CSM until several requirements were met. In the meantime, the Developer had decided to expand the original project. In a memoran-

dum dated January 31, 2007, the Waukesha town planner advised the plan commission that the Developer was seeking "to establish a family entertainment center." The town planner noted, "If the proposed facility is determined appropriate for this site the previously approved CSM for 3 lots would need to be resubmitted to create 4 lots."

¶ 8. By correspondence dated July 5, 2007, the Developer acknowledged receipt of the Town's development agreement for limited site improvements "as it was approved by the Town Board," but explained that its "intention at this time is to annex this project into the City of Waukesha." By letter dated September 17, 2007, the Developer petitioned the mayor and common council of the city of Waukesha to annex the property. The Town sued for breach of contract and, following cross-motions for summary judgment, the circuit court granted judgment to the Town. The Developer appeals.

## DISCUSSION

¶ 9. The Developer challenges the Town's authority to enter into a contract such as the Agreement to Waive or Reliquish Right to Petition or Participate in Annexation Proceedings,[2] which limits a property owner's statutory right to petition for annexation. It further argues that, even if the Town did have such authority, the annexation waiver here was not supported by consideration and is therefore unenforceable.

¶ 10. We review summary judgments de novo, using the same methodology as the trial court. *Young v. West Bend Mut. Ins. Co.*, 2008 WI App 147, ¶ 6, 314

---

[2] For convenience, we will refer to this agreement as the annexation waiver.

Wis. 2d 246, 758 N.W.2d 196, *review denied,* 2009 WI 5, 315 Wis. 2d 58, 759 N.W.2d 773 (WI Dec. 08, 2008). Summary judgment is appropriate if the pleadings and evidentiary submissions of the parties show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2) (2007–08).[3] We will reverse a decision granting summary judgment if the circuit court incorrectly decided legal issues or material facts are in dispute. *Coopman v. State Farm Fire & Cas. Co.*, 179 Wis. 2d 548, 555, 508 N.W.2d 610 (Ct. App. 1993).

¶ 11. When, as here, both parties move for summary judgment, a court may generally accept that no genuine issue of material fact exists. *See Millen v. Thomas*, 201 Wis. 2d 675, 682–83, 550 N.W.2d 134 (Ct. App. 1996). When no material facts are disputed, we are left with questions of law for our de novo review. *See State v. Knapp,* 2005 WI 127, ¶ 20, 285 Wis. 2d 86, 700 N.W.2d 899. With these standards in mind, we turn to the merits of the parties' arguments.

*Town's Authority to Request Annexation Waiver*

¶ 12. The Developer offers two arguments in support of its position that the Town exceeded its authority when it required the annexation waiver. First, the Developer asserts that the relevant statutes prohibit such actions. Specifically, it argues that the annexation waiver allows the Town to maneuver around a clear statutory prohibition of its power to influence annexations. Second, it contends that the annexation waiver is the product of coercion by the Town.

---

[3] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

¶ 13. We begin with the question of whether a town has the statutory authority to require an applicant to enter into a collateral, binding agreement to do something not required by ordinance in order to facilitate the town's approval of and participation in a development project. The Developer correctly observes that municipalities are created by and derive their authority from the legislature. *See Haug v. Wallace Lake Sanitary Dist.*, 130 Wis. 2d 347, 351, 387 N.W.2d 133 (Ct. App. 1986). The statutory authority and powers granted to towns are generally found in WIS. STAT. ch. 60, "Towns," and WIS. STAT. ch. 66, "General Municipality Law." Other statutes address a town's right to adopt ordinances related to the development of property within its boundaries. *See, e.g.,* WIS. STAT. §§ 236.13(1)(b) and 236.45(2).[4]

¶ 14. The Developer essentially argues that because there is no express grant of authority for a Town to request an annexation waiver from a property owner,

---

[4] It is also noteworthy that the power of a town board may be broadened by the exercise of village board powers under WIS. STAT. § 60.10(2)(c), which provides that the town may resolve to "exercise powers of a village board under [§] 60.22(3)." Such a resolution "is general and continuing." Sec. 60.10(2)(c). Therefore, a specific resolution to exercise village powers when dealing with the Developer was not required. At oral argument, the Town asserted that its statutory authority to protect its interests was, in part, due to its ability to exercise of village powers. The Developer did not dispute this assertion. Village powers derive from WIS. STAT. ch. 61. Most importantly, villages have the broad power to act "for the government and good order of the village, for its commercial benefit and for the health, safety, welfare and convenience of the public, and may carry its powers into effect by license, regulation, suppression, borrowing, taxation, special assessment, appropriation, fine, imprisonment, and other necessary or convenient means." WIS. STAT. § 61.34(1).

the authority does not exist. The Town responds that there is no express prohibition of this type of agreement either, and thus it falls within the broad corporate powers of the Town. We agree with the Town.

█

¶ 15.  Our review of the relevant statutes and case law leads us to conclude that there is nothing to prevent the Town from entering into a collateral agreement such as an annexation waiver with a developer. Under WIS. STAT. § 60.01(2)(c), the Town has the authority to enter into agreements that are necessary to the exercise of its corporate powers. Furthermore, a town board, exercising village powers, has the authority to act for its own commercial benefit. *See* WIS. STAT. §§ 60.22(3), 60.10(2)(c), and 61.34. A recent article explained the economic concerns facing Wisconsin towns, particularly with regard to annexation: "It is not uncommon for towns that create land use plans to guide development in a manner that will eventually qualify them to meet the requirements for incorporation. Those plans, however, may be rendered obsolete upon the annexation by a city or village of territory the towns contain." Robert D. Zeinemann, *Overlooked Linkages Between Municipal Incorporation and Annexation Laws: An In-Depth Look at Wisconsin's Experience,* 39 URB. LAW 257, 264–65 (2007) (footnotes omitted). Zeinemann notes that "[t]own officials in Wisconsin are increasingly reacting against the more limited powers of towns among Wisconsin's local governments and, with some success, they have sought a share of the urban powers and growth that traditionally occurred in cities and villages." *Id.* at 305 (footnotes omitted).

¶ 16.  According to the undisputed facts, the Town previously experienced a substantial loss of anticipated tax revenue when the Town cooperated with a devel-

oper who subsequently petitioned for annexation of its property to the city. In its brief, the Wisconsin Towns Association points out, "In addition to losing territory and tax base, [when an annexation occurs] towns often lose infrastructure."[5] Thus, the Town's pursuit of the annexation waiver was based on actual past experience and the resolve to use its corporate powers to protect its economic interests. We are persuaded that the Town had the authority, in the exercise of its corporate power, to seek an annexation waiver to protect the interests of the Town.

¶ 17. The Developer next directs us to *Hoepker v. City of Madison Plan Commission*, 209 Wis. 2d 633, 563 N.W.2d 145 (1997), for the proposition that a municipality may not condition plat approval on annexation. The *Hoepker* court stated, "Municipalities cannot coerce or unfairly induce an elector and/or property owner into agreeing to annexation." *Id.* at 646. Likewise, the Developer argues, a municipality cannot condition plan approval on an annexation waiver. We reject the analogy. In *Hoepker*, the property owners were given a choice: sign the annexation petition or leave their land undeveloped. *Id.* at 648. Here, the Town never issued such an ultimatum. The Developer sought cooperation and accommodation from the Town as it moved

---

[5] At our request, the Wisconsin Towns Association filed an amicus curiae brief. It directs us to *International Paper Co. v. City of Fond du Lac*, 50 Wis. 2d 529, 533, 184 N.W.2d 834 (1971), for the legal rule that public streets and alleys are not to be taken into account when considering whether all owners of real property have petitioned for annexation. The result, explains the Association, is that a town may cooperate with a developer by making public improvements to facilitate a private project, yet will have no power to prevent annexation of any town roads included in the property owner's petition.

forward with its plans for a substantial commercial development. Nothing in the file suggests *Hoepker*-style coercion here.

¶ 18. We have held that cooperative agreements between municipalities and developers are within the powers conferred on villages by WIS. STAT. § 61.34(1). *See Save Elkhart Lake, Inc. v. Village of Elkhart Lake,* 181 Wis. 2d 778, 788, 512 N.W.2d 202 (Ct. App. 1993) (agreement between the village and the developer); *see also Town of Brockway v. City of Black River Falls,* 2005 WI App 174, ¶ 35, 285 Wis. 2d 708, 702 N.W.2d 418 (agreement between the city and the developer). Furthermore, our supreme court has concluded that a municipality may condition the extension of city services on an annexation agreement. *See Town of Hallie v. City of Chippewa Falls,* 105 Wis. 2d 533, 542, 314 N.W.2d 321 (1982). There, the town proposed to construct its own sewage collection system and connect it to the city system for treatment. *Id.* at 535. The city declined and, in turn, offered to allow the town to use its treatment facility only if the town agreed to allow the city to provide for the collection of sewage and other municipal services. *Id.* The town would not agree and, subsequently, a portion of the town was annexed to the city. *Id.* The court held that annexation can be an appropriate prerequisite to extending sewer services outside of city limits. *Id.* at 542.

¶ 19. It is clear from the record that the plan development and CSM approval process between the Town and the Developer was a fluid process, which stemmed from the Developer's initial request for the Town's consideration of its plan, to the Developer's desire for accommodations from the Town, to the plan commission's request for the annexation waiver, to the board's acceptance of the commission's recommenda-

tion for approval of the CSM, to further CSM and site plan revisions at the request of the Developer. The record lacks any indication that the Developer had any hesitation or complaint at the prospect of the annexation waiver. Furthermore, the facts of this case do not suggest that the Town was attempting to extract an agreement from a developer who was willing to comply with the Town's existing ordinance requirements prohibiting the initiation of annexation proceedings.

*Enforceability of the Annexation Waiver*

¶ 20. The Developer next argues that even if the Town had the authority to enter into a collateral agreement as a condition of project approval, the agreement here was nonetheless void because it was not supported by consideration. It contends that cooperation with a developer with regard to ordinance requirements is standard practice and therefore cannot serve as consideration for a collateral agreement.

¶ 21. Consideration, which must be bargained for, may be either a benefit to the promisor or a detriment to the promisee. *McLellan v. Charly*, 2008 WI App 126, 27, 313 Wis. 2d 623, 758 N.W.2d 94, *review denied,* 2008 WI 124, 314 Wis. 2d 281, 758 N.W.2d 925 (WI Oct. 15, 2008). In deciding whether there is consideration to support a contract, we are not concerned with the adequacy of the consideration but with the existence of legal consideration because [t]he adequacy in fact, as distinguished from value in law, is for the parties to judge for themselves. *Id.* (citations omitted). A consideration of even an indeterminate value, incapable of being reduced to a fixed sum, can be sufficient to constitute legal consideration. *Id.* (citation omitted).

¶ 22. In its summary judgment rationale, the circuit court noted that just "because the town is in the business of pursuing development or not pursuing development as the case may be, that that takes them out of the realm of being unable, if you will, to provide consideration to an account." The court found that there was, in fact, consideration as a result of the Town's negotiations with the Developer:

> [I]t was clear the Town was willing to deal in a good faith manner to make this development a reality. It meant changes . . . . It meant making some bending of rules related to fill removal regarding partitioning of the property that wouldn't directly be involved in the development [but rather] involved a sale to a bank . . . . [T]hat involved arguable amounts of time, effort and money on the part of the town.

¶ 23. The Town offers that examples of consideration here include providing "waivers from strict code enforcement of the Town's zoning and land division codes, modification of the Town's zoning code so as to enhance the development of the [p]roperty, as well as the active assistance and participation of Town officials when discussing the development of the [p]roperty with potential purchasers." The Wisconsin Towns Association suggests that the consideration one may receive for an annexation waiver could be "municipal support and cooperation in the development process . . . [and/or] a willingness to contract away the right to exercise some proprietary function." We agree that these are examples of adequate consideration for a freely and voluntarily negotiated annexation waiver. Because the Town's accommodations were a benefit to the Developer as well as a burden on the Town, the annexation waiver is supported by consideration. *See McLellan*, 313 Wis. 2d 623, ¶ 27.

¶ 24. Finally, the Developer argues that a CSM was never approved by the town board; rather, it was conditionally approved. The Developer asserts that the annexation waiver cannot survive as a stand-alone agreement without the approved CSM. We dispense with this argument by noting that the annexation waiver makes no mention of a CSM. The Developer was free to bargain for such a provision in the annexation agreement, but it did not. When the Town engaged in activities to accommodate and advance the Developer's plans, regardless of whether the CSM was ultimately approved, the Town lived up to its end of the bargain.

## CONCLUSION

¶ 25. A Town has the authority to enter into contracts that are necessary for the exercise of its corporate powers. WIS. STAT. § 60.01(2)(c). Nothing in the relevant statutes prohibits a Town from seeking an annexation waiver in its negotiations with a property owner; furthermore, nothing prevents enforcement of such an agreement if it is made freely and voluntarily by the parties and is supported by consideration. Accordingly, we affirm the summary judgment in favor of the Town.

*By the Court.*—Judgment affirmed.